## IRA W. HATCH *et al.*

*v.*

## JOHN MARSH.

1. TEXAS CATTLE—*having a lien on, does not create a liability as owner under the statute.* Where a party borrowed money with which he purchased Texas or Cherokee cattle, and gave to another a lien on the cattle, to indemnify him as the surety on the notes given by the purchaser for the borrowed money, the party holding such lien, without the possession of the cattle, would not be the owner thereof within the meaning of the statute of 1867 prohibiting the bringing, having possession, or owning such cattle in this State.

2. SAME—*possession.* A party who simply has a lien upon Texas cattle to indemnify him as a surety upon the note of the owner, can not, by virtue of such lien, be considered as having either the actual or constructive possession, and is not liable, under the statute, for damages done by such cattle.

3. SAME — *ownership must be absolute to render a party liable.* The ownership contemplated by the statute to render a party liable for damages resulting from owning Texas or Cherokee cattle in this State, must be an unconditional ownership, and it is error to instruct a jury that a party is liable, under the statute, if he had a conditional ownership in the cattle at the time of the injury complained of.

4. INSTRUCTIONS. In doubtful cases, the court should not, by instructions, single out isolated portions of the evidence and tell the jury to consider them; all the evidence is for the consideration of the jury, and the practice of making detached portions prominent, should not be encouraged.

APPEAL from the Circuit Court of Moultrie county.

Mr. ANTHONY THORNTON, for the appellants.

Messrs. CREA & EWING, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The question upon which this case turns, is, whether appellant Smith owned or possessed the cattle, within the meaning of the statute. That he intended to acquire a lien, and that Hatch intended to and did give him a lien on the cattle, we think is clear. But does that, of itself, create a liability on the part of Smith? The act of 1867, Sess. Laws, 169, provides, that it shall not be lawful for any person to bring into this State, or own, or have in possession, any Cherokee or Texas cattle. The second section imposes a penalty, and provides that such person shall pay all damages that may accrue to any person by reason of such violation of the act.

It is not claimed, nor can it be, that Smith brought the cattle into the State. Nor do we think the evidence establishes an ownership in him. The testimony of Hatch and Smith is, that there was no purchase by Smith, but Hatch was to hold them as security for the payment of the notes Smith

had indorsed, and Hatch was to sell when Smith required it. Low, who testified to Smith's admission that he purchased of the bank, must have been mistaken, if Smith and Hatch are to be credited. Again, the bank did not own the cattle. Mansfield furnished the money to purchase the cattle for Hatch, and they were purchased and shipped in Mansfield's name.

A consideration of the entire evidence seems to show that Smith was not the owner, but simply had a lien on them to indemnify him as Hatch's surety for the two notes of $10,000 each, on which the money was procured to pay Mansfield for his advances to Hatch for the purchase of the cattle. He was not the absolute owner of the cattle, and did not even have such a lien on the cattle as he could have enforced against *bona fide* purchasers or creditors, and we think, from the evidence in the case, that Smith was not an owner of the cattle within the meaning of the statute.

The possession referred to in the statute must have been intended as the usual and well known possession that men generally have of personal property. Smith does not seem to have had such possession. Hatch says he was to hold them in the name of Smith for his security, until the latter should direct him to sell ; and to the same effect is Smith's testimony. If this testimony is true, Hatch held the possession, whilst Smith had a lien on them to indemnify him as Hatch's surety on the notes. Smith could not have replevied the cattle and taken them from the possession of Hatch, as he was to hold them until Smith directed him to sell. He could, no doubt, have resorted to legal proceedings and restrained Hatch from disposing of them contrary to, or without his directions, or from otherwise violating their agreement. But we fail to see that he had the possession, or was even entitled to it. If this is so, then Smith should not be held liable for injury inflicted by Hatch whilst he was in possession. We think the evidence fails to show either actual or constructive possession of the property in Smith. He had no control of the cattle beyond his power to say when Hatch should sell.

Suppose Smith had, to secure himself. taken a mortgage authorizing Hatch to hold and retain possession, could it be reasonably contended that in such a case Smith would have been liable? We think not, because the possession would have been manifestly in Hatch; and if, with such a security, he would not have been regarded as in possession, much less should he be in a case like the present. It is contrary to the principles of justice and law that a man shall be held liable for the acts of others in respect to animals or property over which he has no control. And this statute proceeds upon that principle when it requires the person to bring the cattle into the State. to own them, or have them in possession, before he can be liable. If he owns them. he is presumed to have them in his control,,and so, when he is in the actual possession. It can not be held that a man must be liable for damage done by cattle on which he has a lien, but over which he has no control beyond the mere power to enforce and render his lien effective.

From what we have said, the third and sixth of appellee's instructions were wrong. They announce a rule repugnant to the views here expressed, and were calculated to, and no doubt did, mislead the jury. The fourth and fifth were wrong in telling the jury that if Smith had a mere conditional ownership in the property, when the disease was communicated, he was liable. These were manifestly wrong. The legislature, when it used the term "owner," we must presume, intended it to be understood in its usual sense, and not a conditional ownership. The phrase employed in the instruction is not precise or definite, but is very vague. It might embrace a variety of kinds of conditions on which the ownership could only become absolute, in all or any of which the conditional owner would have not the slightest power or control over the property. It would be a harsh construction of the statute to hold that any lien on cattle should render the party liable, whilst he could not control them. And equally so, where a person had purchased on conditions that were not to be performed for

months after the disease was communicated, and who could not have possession until he became the absolute owner.

The last of appellee's instructions is not properly drawn, in referring to a portion only of the evidence, and making it prominent in the finding of the issues. In doubtful cases, the judge, by instructions, should not single out isolated portions of evidence, and tell the jury to consider them. All the evidence admitted is for the consideration of the jury, and the practice should not be encouraged in making detached portions prominent. It would not have been error to have refused this instruction.

The judgment of the court below must be reversed.

*Judgment reversed.*