DANIEL R. BRANT

v.

BENJAMIN E. GALLUP ET AL.

</div>

1. CONTRACTS—BURDEN OF PROOF.—In order to the formation of a contract, there must be a meeting of minds, and where the contract is not reduced to writing, if it appears that the language used or the terms proposed are understood differently by the parties, there is no such meeting of minds. Where a proposition is made and assented to, the law raises the inference that both understand it alike, and if such is not the fact, the burden of showing a misunderstanding is upon him who asserts it.

2. QUESTIONS OF FACT.—An instruction reciting certain acts and declarations of the plaintiff as testified to by the defendants, and informing the jury that if they believe the existence of such facts and circumstances as sworn to, then such facts, unless otherwise satisfactorily explained, have a tendency to prove that the defendants did not make the alleged contract, is erroneous. Such an instruction not only brings into undue prominence certain portions of the testimony, but it undertakes to decide for the jury what such facts tend to prove. The jury should be permitted to determine them without being influenced by any expressions of opinion by the court.

3. LETTERS BETWEEN THE PARTIES—EVIDENCE.—It was error to instruct the jury that the written correspondence between the plaintiff and another party—being in relation to the insurance in question—purported to show upon their face that the plaintiff had assumed to perform that for which he had sued the defendants. The question as to what the letters did or did not tend to show, was for the jury. They were admissions of the plaintiff, and the jury was entitled to draw from them such conclusions as in their opinion were fairly warranted thereby, and the plaintiff might rebut all

conclusions unfavorable to him growing out of the correspondence, by other competent evidence.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.  Opinion filed March 2, 1880.

Messrs. BRANDT & HOFFMAN, for appellant; that the instruction as to what constitutes a contract was erroneous, cited Gehr v. Hagermann, 26 Ill. 438; White v. Murtland, 71 Ill. 250; Harding v. Town of Hale, 83 Ill. 501.

The instruction as to what certain acts of the plaintiff tended to prove, was erroneous, as giving undue prominence to portions of the testimony, and as usurping the province of the jury: Eames v. Blackhart, 12 Ill. 195; Sherman v. Dutch, 16 Ill. 283; Bartholomew v. Bartholomew, 18 Ill. 326; Jamison v. Graham, 59 Ill. 94; Merchants' Ins. Co. v. Paige, 60 Ill. 448; Homes v. Hale, 71 Ill. 552; Hatch v. Marsh, 71 Ill. 370; Hewett v. Johnson, 72 Ill. 513; Calef v. Thomas, 81 Ill. 478; Ogden v. Kirby, 79 Ill. 555; Frame v. Badger, 79 Ill. 441; T. W. & W. Ry. Co. v. Brooks, 81 Ill. 245; Cushman v. Cogswell, 86 Ill. 62; Martin v. Johnson, 89 Ill. 537.

Instructions should be based upon the evidence: I. & St. L. R. R. Co. v. Miller, 71 Ill. 463; Ill. Cent. R. R. Co. v. Benton, 69 Ill. 174; Badger v. Batavia Mfg. Co., 70 Ill. 302; Hewett v. Johnson, 72 Ill. 513; Andreas v. Ketcham, 77 Ill. 377; Straus v. Minzesheimer, 78 Ill. 492; Russell v. Minter, 83 Ill. 150; King v. Haley, 86 Ill. 106; Wray v. C. B. & Q. R. R. Co. 86 Ill. 424; Howe S. M. Co. v. Lyman, 88 Ill. 39.

An erroneous instruction which assumes to dispose of the entire case is not cured by others which may be correct: Roach v. The People, 77 Ill. 29; Camp Point Mfg. Co. v. Ballou, 71 Ill. 417; C. B. & Q. R. R. Co. v. Payne, 499 Ill. 49; Ill. Cent. R. R. Co. v. Maffit, 67 Ill. 431; Volk v. Roche, 70 Ill. 297; C. B. & Q. R. R. Co. v. Harwood, 80 Ill. 88.

As to rescission of contract: Banister v. Read, 1 Gilm. 92; Corney v. Newberry, 24 Ill. 203; Fox v. Kitton, 19 Ill. 519; Myers v. Gross, 59 Ill. 436; Follansbee v. Adams, 86 Ill. 13; Kappes v. White Lumber Co. 1 Bradwell, 280.

Upon the Statute of Limitations: Spilman v. Roanoke Nav. Co. 74 Nor. Car. 675; Austin v. Moore, 7 Met. 116; Amott v. Holden, 18 Adol. & E. 593; Sanders v. Cowan, 15 M. & W. 48; Blair v. Ormond, 17 Q. B. 423; Flower v. Peck, 1 Barn. & Adol. 428; Muston v. Gladwin, 6 Adol. & E. 953; Kane v. Cook, 8 Cal. 449; Penobscot R. R. Co. v. Mayo, 67 Me. 47; Campbell v. Vining, 23 Ill. 525; Thompson v. Sornberger, 78 Ill. 353; Grassly v. Adams, 71 Ill. 550; Teutonia Life Ins. Co. v. Mueller, 77 Ill. 22.

Mr. SIDNEY SMITH and Mr. GEORGE I. PADDOCK, for appellees; as to the Statute of Limitations, cited Boylston v. R. & W. Turnpike Co. 14 Vt. 311; Fish v. Folly, 6 Hill, 54; Schaffer v. Lee, 8 Barb. 412; Waterbury v. Graham, 48 Supr. Ct. 215; Carvill v. Garriques, 5 Barr. 152; Blunt v. McCormick, 3 Denio, 28e; Howell v. Young, 5 Barn. & Cres. 259; Wilcox v. Plumber, 4 Pet. 172; Mardis v. Shackleford, 4 Ala. 493; Sinclair v. Bank of So. Carolina, 2 Strobh. 344; Angell on Limitations, § 136; Bank v. Waterman, 26 Conn. 335.

If the defendants never entered upon the performance of the contract, plaintiff's remedy is an action for a total breach: Clark v. Marsylia, 1 Denio, 313; Wilson v. Martin, 1 Denio, 602; Moody v. Levenich, 4 Daly, 401; Chamberlain v. McAllister, 6 Dana, 352; Whitaker v. Sandifer, 1 Duval, 261; Goodman v. Pocock, 15 Adol. & El. 576.

Plaintiff should have procured the insurance himself on failure of the defendants so to do, and thus reduced his damages to actual loss arising from their wrongful conduct: Wilson v. Martin, 1 Denio, 602; Hamilton v. McPherson, 28 N. Y. 76; Shearman on Negligence, § 342; Addison on Torts, § 1386; Ill. Cent. R. R. Co. v. Finnigan, 21 Ill. 646; T. P. & W. R. R. Co. v. Parker, 49 Ill. 385; T. P. & W. R. R. Co. v. Pindar, 53 Ill. 447; Sherman v. Iron Works, 2 Allen, 527.

In support of instructions given for defendants: Duncan v. Niles, 32 Ill. 532; Martin v. The People, 13 Ill. 341; Heartt v. Rhodes, 66 Ill. 351.

Where substantial justice has been done, the verdict will not be disturbed: Leigh v. Hodges, 3 Scam. 15; Smith v. Schultz.

1 Scam. 490; Gillett v. Sweat, 1 Gilm. 475; Newkirk v. Cone, 18 Ill. 449; Young v. Silkwood, 11 Ill. 36; Greenup v. Stoker, 3 Gilm. 202.

Bailey, P. J.   This was an action on the case, brought by Daniel R. Brant against Benjamin E. Gallup and Francis B· Peabody for negligence in failing to keep a certain building belonging to the plaintiff, known as Dearborn Theatre, insured against fire according to the terms of a certain alleged agreement in that behalf between the plaintiff and the defendants. The declaration alleges, in substance, that on the first day of April, 1869, the defendants, under the firm name of Gallup & Peabody, were engaged in the business of loan agents in the city of Chicago; that on that day the defendants had procured for the plaintiff from one Jonathan Bourne, Jr., a loan of $45,-000 for five years, and the plaintiff had executed to said Bourne a mortgage upon said Dearborn Theatre, and other real estate to secure said loan; that said mortgage contained a covenant on the part of the mortgagee to keep the buildings on the mortgaged premises fully insured against loss or damage by fire up to the amount of their fair insurance value, in good, responsible insurance companies, the selection of such companies to be left to the option of said Bourne; the insurance to be made payable, in case of loss, to Bourne, and the policies to be delivered to him.

That the defendants retained and received out of said sum of $45,000 the sum of $2,500 as their commissions; that in consideration of said commissions they at the same time entered into a verbal agreement with the plaintiff to keep said theater building insured to its fair insurable value, in good and responsible insurance companies, during the life of the mortgage, said insurable value being $150,000, and that the plaintiff was to pay the premiums therefor whenever requested so to do by the defendants; it thereby became the duty of the defendants to use all reasonable care and diligence in procuring said building to be so insured during the life of the mortgage, and to request the plaintiff from time to time to furnish them such sums of money as were necessary to pay for the insurance;

that the defendants, not regarding their duty, did not use dili-
gence in procuring said building to be insured as aforesaid, and
did not apply to the plaintiff for money to pay the premiums
therefor; that on account of said neglect of the defendants,
said building, on the 9th of October, 1871, was not insured in
good and responsible companies to its full value, or any part
thereof; and that at the date last aforesaid the building was
destroyed by fire, whereby the plaintiff lost its insurable value,
viz., $150,000.

The suit was commenced on the 6th day of October, 1876.
To the declaration the defendants plead not guilty and the
Statute of Limitations. On the trial before the court and a
jury, a verdict was found for the defendants, and the court,
after overruling the plaintiff's motion for a new trial, gave
judgment against him for costs, from which judgment he has
prosecuted this appeal. The questions presented by the appel-
lant for our consideration relate principally to the instructions
to the jury.

Whether the contract between the plaintiff and the defen-
dants set out in the declaration, by which the defendants un-
dertook to keep the building in question insured for the plain-
tiff, was ever in fact made, was a question upon which the
evidence was conflicting. The plaintiff, and some other wit-
nesses who were present at the time the loan was consummated,
testify to such an agreement, or to conversations between the
parties tending to establish its existence, and there is some
evidence of subsequent admissions or recognitions of the
agreement by the defendants. Both the making of the con-
tract and all subsequent admissions in relation thereto, are
positively denied by the testimony of Peabody, the one of the
defendants who was personally cognizant of the transaction,
and his testimony is corroborated by the testimony of other
witnesses, and by various facts and circumstances in proof.
The third instruction given to the jury at the instance of the
defendants was as follows:

"It is not claimed that the alleged contract between Brant
and Gallup & Peabody was reduced to writing; and to establish
a verbal contract, it is necessary to prove that both parties thereto

Brant v. Gallup.

understood its terms alike.    There must be a meeting of minds in relation thereto; and in this case it is necessary to prove by a preponderance of evidence that Peabody as well Brant understood at the time that he was binding himself and Gallup & Peabody to Brant to keep said theater building fully insured for Brant during the life of the mortgage; and unless the jury believe that such proof has been made, then the alleged contract has not been established, and the plaintiff cannot recover."

It is doubtless the law, that in order to the formation of a contract, there must be a meeting of the minds of the parties. The same identical proposition must be assented to by both. Where the contract is not reduced to writing, if it appears that the language used, or the terms proposed, are understood differently by the parties, there is no such meeting of their minds as will constitute a contract between them.    While this is so it is also true that, in the absence of evidence to the contrary, it will be presumed each party uses language in its ordinary sense, and that it is so understood by the other party.    Where a proposition is made and assented to, the law raises the inference that both understand it alike; and if such is not the fact, the burden of showing a misunderstanding will be upon the party who asserts it.

The instruction, however, throws upon the party seeking to establish a contract, the burden not only of proving its terms, but also of making affirmative proof that there was no difference of understanding as to the meaning of the language employed.    This, manifestly, shifts the burden of proof to the party upon whom it does not properly rest.    If the defendants insist that while using language which in its ordinary sense would amount to an undertaking on their part to be personally bound, they were really, according to their understanding, acting for and as the agents of Bourne, it was incumbent on them to show that such was the fact.    The proposition covered by the instruction is one of the most material propositions in the case, and the evidence in relation thereto being conflicting, it was important that the jury should be accurately instructed as to the law.    The instruction given them was likely to mislead them, and was erroneous.

The seventh instruction, given at the instance of the defendants, was as follows:

"If the jury believe from the evidence that the plaintiff, Brant, testified in the Bourne foreclosure suit to facts which are inconsistent with the alleged contract on which this suit is brought; and if they further believe, from the evidence, that the plaintiff, Brant, in person and by his book-keeper, wrote letters to Bourne in which he furnished Bourne all the policies of insurance on the theater that were ever furnished to him after the year 1869; and if the jury further believe, from the evidence, that the plaintiff, Brant, held repeated interviews with the defendants, Gallup & Peabody, after the burning of the theater, and did not in any of those interviews make any claim that Gallup & Peabody had neglected any duty in regard to insurance of the theater; and if the jury further believe, from the evidence, that the plaintiff allowed nearly five years to elapse after the theater was burned, before making any claim against Gallup & Peabody, and before bringing suit against them; then the jury are instructed that such facts, unless otherwise satisfactorily explained and accounted for in the evidence, have a tendency to prove that the defendants did not make the alleged contract on which this suit is brought, and the jury have the right to take all these facts into consideration, together with all other facts and circumstances in evidence in determining whether the alleged contract was made."

We think this instruction is justly liable to criticism. It groups together and brings before the jury, with undue prominence, the facts and circumstances given in evidence by the defendants in corroboration of their version of the transaction. The practice of giving instructions of this character has long been discountenanced by the Supreme Court; and although that court has usually declined to reverse for this error alone, it has frequently characterized it as an objectionable mode of presenting a case to the jury by instructions. Hatch et al. v. Marsh, 71 Ill. 370; Hewett v. Johnson, 72 Id. 513; Mix v. Osby, 62 Id. 193; Chittenden v. Evans, 41 Id. 251; Grube v. Nichols, 36 Id. 92; McCartney v. McMullen, 38 Id. 237; Homes v. Hale, 71 Id. 552.

We think a more serious objection to this instruction grows out of the fact that it undertakes to decide for the jury what these various circumstances tend to prove. The proper inferences to be drawn from the evidence, especially when such evidence is purely circumstantial in its character, are questions for the jury alone, and they should be permitted to determine them wholly uninfluenced by any expressions of opinion by the court. While in the concluding portion of the instruction, the court, it is true, makes reference to all the other facts and circumstances in evidence, yet we think the instruction is so worded as to be likely to leave the impression on the minds of the jury that the court regarded this evidence as specially significant as bearing upon the existence of the contract set up in the declaration.

Complaint is also made of the fifteenth instruction given for the defendants. It is as follows:

" The court instructs the jury that the written correspondence purporting to be correspondence between Bourne and Brant before the great fire of October 9, 1871, and commencing with a letter from Bourne to Brant, dated February 3, 1870, purports to show upon its face that Brant himself assumed the duty and responsibility of attending to and placing insurance on Dearborn Theater, under the insurance clauses in the mortgage in evidence, for the years 1870 and 1871; and if the jury believe from the evidence, that Brant received the letters addressed to him by Bourne, forming part of this correspondence, and that he either directed or authorized the letters written by his book-keeper, Murphy, and by Martin also, forming a part of this correspondence, then Brant is bound by this correspondence, and its effect as evidence in this case."

The correspondence here referred to consists of a series of letters between Bourne, of the one part, and Brant, writing either in person, or through Martin and Murphy, acting as his agents, of the other. The first letter is from Bourne, under date of February 3, 1870, notifying Brant that policies amounting to $22,000 on Dearborn Theater expired the previous January, and requesting him to send renewals of the same. The next is from Brant to Bourne, under date of February 9, 1870,

saying that said policies had been renewed, but the clause making the loss payable to Bourne having been omitted, they had been sent back for correction, and would be completed in a day or two, and handed over to Gallup & Peabody. On the 15th day of the same month, Martin wrote to Bourne for Brant, enclosing the policies on said building for $15,000, and promising to send the balance in a few days. It was added, by way of postscript, that two of said policies were written from March 1st, as they had $6,000 expiring at that time. Bourne replied, under date of March 12th, acknowledging the receipt of policies for $15,000, and noting what was said in the letter received, that the remaining policies would be forwarded soon. The next letter is from Brant, dated May 17, 1870, requesting the return of the "Bloomington policy," for the reason that it had been canceled, and the risk placed in another company, and the policy enclosed. Another policy, also, for $3,000 was forwarded, and the letter closed by saying: "We still owe you another policy, which will be forwarded in a few days." Under date of August 13, 1870, Brant again wrote, sending a policy for $3,000 in the Great Western Insurance Company, in lieu of a policy in the National, of Davenport, and requesting a return of the latter. The next letter is from Brant to Bourne, under date of February 10, 1871, enclosing two policies, amounting to $5,000, and stating that more were in way of negotiation, and as soon as completed would be forwarded. The letter further inquires whether Bourne would accept payment of $10,000 or $15,000 the following fall. Bourne replied, February 24, 1871, declining to make any promises to receive payment of part of the loan before all matured, and requesting that the remaining policies should be forwarded, and that arrangements should be made for another policy, for $3,000, expiring June 27th. March 28, 1871, Brant wrote, enclosing five policies, and on the 31st day of the same month, Bourne replied, acknowledging the receipt of five policies, amounting to $12,500.

There can be no doubt that these letters, if shown to be authentic, were competent evidence upon the question as to whether there was in fact any agreement between the plaintiff

Brant v. Gallup.

and the defendants by which the latter undertook to attend to keeping the building insured. They consisted of admissions, and evidenced a course of conduct, both inconsistent with the supposition that a contract such as that set up in the declaration was in fact in existence. If the plaintiff was relying upon the defendants to attend to the insurance, it is difficult to explain why he was attending to it himself, instead of calling upon them to perform their duty under their contract. But the evidence furnished by these letters was purely circumstantial, and its bearing upon the issues presented by the pleadings was a question for the jury alone. It stands upon no footing different from other conduct or admissions inconsistent with the claim he now seeks to set up, and which are not conclusive in their character, so as to work an estoppel upon the plaintiff.

The rule that the construction of written contracts is a question of law for the court, has no application. These letters did not, on their face, purport to be a contract even between Brant and Bourne, as to who should attend to procuring the insurance. They contained promises as to some specific policies, but no one would pretend that Bourne, had his only right to require Brant to keep the building insured depended upon such promises and agreements as were contained in the letters, could have compelled him to perform that duty. The letters were mere evidence of acts done by Brant in performance of the obligations imposed upon him by the covenants in the mortgage.

But even if it should be admitted that the construction of this correspondence was a question for the court, we think the interpretation put upon it by the instruction was unwarranted. It says that said correspondence "purports to show upon its face that Brant himself assumed the duty and responsibility of attending to and placing insurance on Dearborn Theater, under the insurance clauses in the mortgage in evidence, for the years 1870 and 1871." Doubtless the correspondence and the facts which it admits are evidence from which the jury might infer that Brant had assumed the duty of attending to the insurance, but the correspondence does not so state, nor does such inference arise except as a conclusion of fact to be drawn from the circumstances which the correspondence discloses.

The instruction is also erroneous in holding that Brant was bound by the correspondence. Precisely what was meant by this clause of the instruction it is somewhat difficult to determine. It may have been understood by the jury as holding that Brant was concluded by the correspondence from denying that the duty and responsibility of attending to the insurance rested upon him, thereby giving the acts and admissions shown by the letters, the effect of an estoppel. It is manifest that such was not their effect. The jury were entitled to draw from these acts and admissions such conclusions as in their opinion, after considering all the evidence in the case, were fairly warranted thereby; but it was clearly competent for the plaintiff to seek to rebut any conclusions unfavorable to him, growing out of the correspondence, by any other competent evidence within reach.

Several other instructions for the defendants are complained of, but as the errors above pointed out are sufficient to necessitate a reversal of the judgment, we do not deem it our duty to examine them in detail. The judgment will be reversed and the cause remanded for a new trial.

<div style="text-align:right">Judgment reversed.</div>