CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY

*v.*

SAMUEL WARNER.

*Filed at Ottawa January 23, 1884.*

1. NEGLIGENCE — *contributory negligence, as, in uncoupling cars.* Where a railway company has in use on its road, freight cars without end ladders, steps and handles, which adjuncts are necessary in coupling or uncoupling while the cars are in motion, and a freight conductor is cognizant of this fact, it is clearly his duty, before attempting to pass from the side to the end of the car for the purpose of uncoupling it, to ascertain whether it is one of that kind, and if he finds it is, it is negligence on his part to attempt to make the uncoupling while the train is in motion.

2. So in an action by such conductor against the company, to recover for a personal injury received while attempting to uncouple a car having no ladder or steps or handles at its end, the defendant asked an instruction "that it was the duty of the plaintiff, before attempting to uncouple the car in question, to use ordinary and reasonable care to ascertain whether it was safe to do so or not while the train was in motion; and if the jury believe, from the evidence, that it was not safe for the plaintiff to uncouple said car at the time he attempted it, and the plaintiff knew, or might by the exercise of ordinary care have known, that it was not safe to attempt it, then" he could not recover: *Held,* that the instruction was proper, and that it was error to refuse it as asked.

3. SAME—*measure of damages—by whom to be determined.* In cases of negligence resulting in the infliction of a personal injury, the damages, to a large extent, rest in the discretion of the jury. About all the court can do is to confine the jury in their assessment to such damages as are shown by the evidence to result necessarily from the injury complained of.

4. EVIDENCE—*facts not necessary to be proven.* No proof is required of facts which everybody is presumed to know. When such facts become material, it is the duty of courts and jurors to take notice of them, and act upon them without proof.

5. Satisfactory proof of a given act affords at least *prima facie* evidence of the ordinary and probable consequences of such act, and is sufficient until the presumption is overcome by other evidence.

6. So in a suit to recover damages for the loss of an arm, etc., no proof to show that such loss would impair the party's ability to pursue his ordinary business is necessary, upon which to base an instruction relating to damages growing out of the want of such ability.

7. And proof of the crushing and mangling of a plaintiff's arm from the fingers up to within a few inches of the shoulder, and of its subsequent amputation at the shoulder, is sufficient evidence of such degree of pain on his part as to make it a proper element to be considered by the jury in estimating damages.

8. ALLEGATIONS AND PROOFS—*the plaintiff in an action ex delicto not bound to prove all the grounds of action alleged.* In actions *ex delicto* it is not always necessary to a recovery by the plaintiff that he shall prove all the averments of his declaration. It is sufficient to prove enough of them to show a cause of action. Therefore, in a case against a railroad company to recover damages for a personal injury, where several acts and omissions of duty were charged as negligence and the cause of the injury, it was *held,* that a failure to prove each and all of the alleged acts and omissions did not constitute a variance.

9. INSTRUCTION—*as leaving question of law to jury.* An instruction in an action to recover for a personal injury resulting in the loss of an arm, etc., informed the jury that in case they found for the plaintiff it would be proper to consider certain things, and "all damages, present and future, which, from the evidence, can be treated as the necessary and direct result of the injury complained of:" *Held,* that the instruction was not subject to the objection of leaving a question of law to the jury.

10. Instructions should be based upon evidence relating to the general or some particular aspect of the case, and it is the duty of the court to determine in the first place whether there is any evidence relating to the hypothesis assumed by a particular instruction. So if there is evidence tending to prove a fact, an instruction that if such fact is not proved the verdict should be a certain way, is erroneous, as not being based on evidence, and so submitting a question of law to the jury.

11. SAME—*giving undue prominence to subordinate facts.* One of the main issues in an action against a railroad company was, whether the injury to the plaintiff was caused by the negligence of the company in its failure to furnish a car in question with proper steps or an end ladder. An instruction was asked, that if the jury believed, from the evidence, that the plaintiff had, before the trial, made written statements of the cause of the accident to an agent of the defendant, wherein he attributed the accident to the manner in which the engineer slacked up the train, and the way in which the car door slid, as well as to the absence of a step, and that such statements were true, and that the accident could not have happened if the engineer had not slacked up as he did, the plaintiff could not recover. It was *held,* the instruction was properly refused, as it gave undue prominence to part of the evidence, and tended to divert the attention of the jury from the main issue, and cause them to decide the whole case upon a mere subordinate issue.

12. LAW AND FACT—*of which character.* Whether there is any evidence upon a given point or issue, or not, is purely a question of law, to

be determined by the court, and it is not proper to submit such question to the jury.

13. ERROR—*whether it should reverse.* If a reviewing court can see that a case has been fairly tried, and that the judgment is clearly right upon the facts or merits, and that another trial would result the same way, it will not reverse because of an error in the giving or refusing of an instruction. But when the case is a close one on the facts, and the evidence is about evenly balanced, a reversal will be had for any substantial error in the trial court on a material question that may have turned the scale in favor of the successful party.

14. PRACTICE—*how to question sufficiency of declaration.* By pleading the general issue the defendant admits the sufficiency of the declaration, which he can not afterward question by motion to exclude the evidence under it. To question the sufficiency of a declaration the defendant should demur to it, or move in arrest of judgment.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. KIRK HAWES, Judge, presiding.

Mr. MELVILLE W. FULLER, for the appellant:

Plaintiff's third instruction is open to three fatal objections:

*First*—There was no evidence that the loss of his arm did, or would, impair his ability to pursue his business. *Illinois Central R. R. Co.* v. *Weldon,* 52 Ill. 290; *Regan* v. *Railroad Co.* 51 Wis. 599.

*Second*—There was no evidence of the extent of the pain the plaintiff suffered, other than the loss of his arm. Pain, as an element of damage, could not be inferred from this fact.

*Third*—The third objection relates to this clause: "And all damages, present and future, which, from the evidence, can be treated as the necessary and direct result of the injury," etc. There was no evidence on which to base this part of the charge,—none of doctor's or nurse's bills incurred, or of any other expense. Again, it leaves a question of law to the jury. It is for the court to judge what are the elements of damages.

The cases, *Illinois Central R. R. Co.* v. *Read,* 37 Ill. 434, *Whalen* v. *Railroad Co.* 60 Mo. 323, and *Morris* v. *Chicago, Burlington and Quincy R. R. Co.* 45 Iowa, 45, have no application here.

The plaintiff did not adduce evidence to prove his case as laid in the declaration, and the motion to exclude the evidence should have been sustained. *Chicago and Northwestern R. R. Co.* v. *Sweet,* 45 Ill. 197.

The declaration was fatally defective, and the motion to exclude the evidence should have been sustained. *Buzzell* v. *Laconia,* 48 Me. 113; *Williams* v. *Clough,* 3 H. & N. 258.

When a plaintiff alleges certain acts as constituting negligence, he can not rely on any other acts to establish his case. *Railroad Co.* v. *Troesch,* 68 Ill. 545; *Waldhier* v. *Railroad Co.* 71 Mo. 514; *Pierce* v. *Railroad Co.* 72 id. 414.

The master is not bound to throw away his machinery because there may be others "better calculated to insure safety." *L. and N. R. R. Co.* v. *Orr,* 8 Am. Ry. Cases, 94; *Lake Shore and Michigan Southern R. R. Co.* v. *McCormick,* 74 Ind. 440; *Hayden* v. *Railroad Co.* 29 Conn. 549; *Morris* v. *Gleason,* 1 Bradw. 510; *Railroad Co.* v. *Asbury,* 84 Ill. 429; *Railroad Co.* v. *Gildersleeve,* 33 Mich. 133; *Salters* v. *Railroad Co.* 3 Hun, 338; 2 Thompson on Negligence, 983–986.

The rule is different in respect to liability to passengers. *Smith* v. *New York and Hudson River R. R. Co.* 19 N. Y. 127; *Salters* v. *Canal Co.* 3 Hun, 338; *Castello* v. *Railroad Co.* 65 Barb. 92.

Plaintiff knew that the defendant used cars without steps or handles, and before attempting to uncouple he should have ascertained whether the car had them or not.

Mr. Thomas Cratty, and Mr. W. S. Johnson, for the appellee:

Proof of the loss of an arm is proof that plaintiff's ability to pursue his business was impaired, and that he suffered

pain. *Illinois Central R. R. Co.* v. *Read*, 37 Ill. 484; *Morris* v. *Chicago, Burlington and Quincy R. R. Co.* 45 Iowa, 29; *Whalen* v. *Railroad Co.* 60 Mo. 323; *Chicago, Rock Island and Pacific R. R. Co.* v. *Otto*, 52 Ill. 416; *Chicago* v. *Scholten*, 75 id. 468; *Chicago and Alton R. R. Co.* v. *Bonfield*, 104 id. 225.

There was evidence of plaintiff's age at the time of the injury, and of his business then and now,—evidence of his present and future disability by the loss of his arm. *Peoria Ins. Co.* v. *Anapow*, 45 Ill. 87.

The Appellate Court having affirmed the judgment of the circuit court, this court will assume that all the material allegations of the declaration are fully and conclusively established. *Chicago and Eastern R. R. Co.* v. *Rung*, 104 Ill. 645; *Chicago, Burlington and Quincy R. R. Co.* v. *Harwood*, 90 id. 426; *Chicago and Alton R. R. Co.* v. *Bonfield*, 104 id. 226; *Indianapolis and St. Louis R. R. Co.* v. *Estes*, 96 id. 472.

Where the plaintiff showed that the injury was caused by the absence of steps and handles, he made out a *prima facie* case. *Pittsburg, Cincinnati and St. Louis Ry. Co.* v. *Thompson*, 56 Ill. 141; *Eagle Packet Co.* v. *Defries*, 94 id. 602.

This court will not reverse for an error that does no harm. *Eagle Packet Co.* v. *Defries, supra.*

An objection to the sufficiency of the declaration should be taken by demurrer. It is too late after going to trial. (*Chicago, Burlington and Quincy R. R. Co.* v. *Harwood*, 90 Ill. 426.) No objection being made to the introduction of the evidence, for variance or otherwise, it can not be raised in this court. *Roberts* v. *Corby*, 86 Ill. 182.

Defendant's fifth instruction singled out a certain portion of the evidence, and was properly modified. *Hatch* v. *Marsh*, 71 Ill. 370; *Ogden* v. *Kirby*, 79 id. 555; *Evans* v. *George*, 80 id. 51; *Martin* v. *Johnson*, 89 id. 537.

No error in refusing defendant's second and fourth instructions. They do not embody the law as declared in *Chicago,*

*Burlington and Quincy R. R. Co.* v. *Gregory,* 58 Ill. 283; and besides, there was no evidence on which to base them.

The motion to exclude the evidence is in the nature of a demurrer to the evidence, and is never allowed if there is any evidence tending to prove the issues. The finding of the Appellate Court is conclusive that there was such evidence. The same may be said in regard to the assertion that the evidence showed negligence on the part of the plaintiff.

Where the nature of the service is such as to require that exclusive attention be fixed upon it, and that he should act with rapidity and promptness, it can not be expected the servant should always bear in mind the existence of defects. *Snow* v. *Housatonic R. R. Co.* 8 Allen, 441; *Bassett* v. *Fish,* 75 N. Y. 303; *Fairbank* v. *Haentzche,* 73 Ill. 236; Wharton on Negligence, sec. 93.

Mr. Justice MULKEY delivered the opinion of the Court:

On the 10th of August, 1877, Samuel Warner, the appellee, brought an action on the case in the Cook circuit court, against the Chicago, Burlington and Quincy Railroad Company, the appellant, to recover damages for personal injuries received by him while in the employment of the company, and which are claimed to have been occasioned through its negligence. There was a trial on the merits in the circuit court, resulting in a verdict and judgment in favor of appellee, and against the appellant, for $5000. This judgment, on appeal to the Appellate Court for the First District, was affirmed, and the company brings the case here for review.

The accident giving rise to the present suit occurred about two o'clock in the morning of the 20th of August, 1875, at Buda, Bureau county, this State, on the main track of the company's road. Appellee had been in the company's service about six years,—the first four as brakeman, and the last two as freight conductor. At the time of the accident

he had charge of a freight train, and was proceeding to un-couple and detach a car therefrom, the train at the time being in motion. For this purpose, by means of steps run-ning up the side and near the end of the car, he had climbed about half way up to the top, when, standing upon one round of the steps and holding with one hand to another, he threw himself round the corner of the car, expecting to get hand and foothold on similar steps on the other side, from whence he could easily have passed to the dead-wood in the center of the end of the car, where the uncoupling had to be made, but it so happened the car in question had no such steps on it, and there being nothing there which he could take hold of, appellee lost his balance and fell between the rails of the track, the moving train passing over his body. In doing so the iron rods under the center of the brake-beam came in contact with his left arm, crushing and mangling it from the fingers up to within about four or five inches of the shoulder, where, by reason of the injury thus received, it was subse-quently amputated.

The negligence with which the company is charged, and which is relied on for a recovery by appellee, is the company's failure to provide the car in question with end steps or lad-der to be used in making couplings and uncouplings, and for other purposes. It is alleged, in substance, in each of the three counts of the declaration, that it was the duty of the defendant "to provide only properly and carefully constructed cars, with end ladders, side handles and steps thereto at-tached," and that by reason of its failure to do so the injury in question occurred. A direct issue was formed upon this averment in the declaration by the defendant's plea, and the same has been conclusively settled against the appellant. It remains, therefore, to inquire what, if any, errors of law appear of record requiring a reversal.

It is first objected the court erred in giving the plaintiff's third instruction. It is as follows:

"If, under the evidence and instructions of the court, the jury find the defendant guilty, then, in estimating the plaintiff's damages, it will be proper for the jury to consider the effect of the injury in future upon the plaintiff, the use of his arm, and his ability to attend to his affairs generally, in pursuing any ordinary trade or calling, if the evidence shows that these will be affected in the future, and also the bodily pain and suffering he sustained, and all damages, present and future, which, from the evidence, can be treated as the necessary and direct result of the injury complained of."

The first two objections to this instruction, as stated in counsel's own language, are: First, "there was no evidence that the loss of Warner's arm did, or would, impair his ability to pursue his business, much less of the extent to which said ability would be lessened." Second, "there was no evidence of the extent of the pain Warner had suffered, other than the loss of his arm, and that pain, as an element of damage, could not be inferred from that fact." The third objection goes to the language used in the concluding part of the instruction, namely, "and all damages, present and future, which, from the evidence, can be treated as the necessary and direct result of the injury complained of." The specific objections to the use of this language are: First, "there was no evidence to base it upon;" and second, "it left a question of law to the jury." It will be perceived these several objections, except the last, substantially amount to the same thing, and may therefore be properly considered together. The only difference in them is, that they respectively relate to separate parts of the instruction, or to distinct elements of damage contemplated by it; but they are all placed upon the same common ground, namely, that there is no evidence upon which to base the instruction.

We are unable to agree with counsel that the proof of the crushing and mangling of plaintiff's arm from the fingers

35—108 Ill.

up to within a few inches of the shoulder, and of its subsequent amputation at that place, as is shown by undisputed testimony, affords no evidence of that degree of pain which would make it a proper element to be considered by the jury in estimating the damages.   The rules of evidence are but the product of human experience and common sense, and hence they never require the performance of an unnecessary or useless thing.   One of the most elementary of these rules is, that no proof is required of facts which everybody is presumed to know.   When such facts become material in a legal controversy, it is the duty of courts and juries to take notice of them, and act upon them without proof.   It is also part of the common experience of all, that many facts are so intimately connected with and dependent upon each other that the proof of one necessarily establishes the other, or at least affords so strong a presumption of the latter's existence that no additional proof of it will be required until such presumption is overcome by countervailing testimony.   In fact the whole theory of inductive proof is but the practical application of this fundamental principle.   (1 Wharton on Evidence, sec. 327, *et seq.*)   To satisfactorily prove a given act also establishes, at least *prima facie,* the ordinary and probable consequences of such act; and as pain uniformly follows the crushing of a bone or the laceration of the flesh of one in a normal condition, which is always presumed when nothing to the contrary appears, the jury in this case were fully warranted in inferring the fact of pain from the character of appellee's injuries, which were fully shown,—hence it can not be truthfully said there was no evidence to base the instruction upon, so far as it related to the pain or suffering of appellee.   Indeed, we do not think any general words of the witness, such as, "I suffered a great deal," "The pain was very severe," and the like, would have marked more definitely the quantum or degree of suffering than the simple recital of the mangled condition of the arm, requiring its amputation.

But it is suggested that while some pain might be inferred from the injury itself, yet the extent of appellee's sufferings should have been otherwise shown in order to make it an element in the assessment of damages. This position is clearly not tenable, either upon reason or authority. Where, in such case, the law permits a recovery at all, the plaintiff will be entitled to some compensation for his sufferings, whether they be much or little; and the fact that the amount of suffering is not definitely fixed by the testimony, if, indeed, that is possible in any case, will make no difference in this respect. In all cases like the present, where a recovery is permitted at all, if there is any evidence tending to prove the fact of pain, whether much or little, it is the right of the plaintiff to have the jury instructed, if they shall so find the fact, to take it into account in making up their verdict.

All that is here said is equally applicable to the objection, "there was no evidence that the loss of Warner's arm did, or would, impair his ability to pursue his ordinary business," etc. At the time of receiving the injury his business was that of railroading. He had made his way up from a brakeman to a conductor of a freight train. By reason of the accident he lost his position as an employee of the company, and it is manifest, from the loss of the arm itself, that he could not successfully, if at all, follow that business any longer, and the fact he was forced to abandon it was before the jury. That both arms are useful in all, and indispensable in most, of the avocations of life, is but a part of the common information of mankind in general, and hence it required no other proof to establish it. With these facts before the jury, it is difficult to understand by what process of reasoning the conclusion is reached there was no evidence upon which to found the instruction, so far as it related to the impairment of appellee's ability to pursue his ordinary business by reason of the loss of his arm.

What we have already said fully applies to the first branch of the objection relating to the concluding part of the instruction, and is deemed a sufficient answer thereto.

We do not think there is any just ground for the claim that the latter clause of the instruction left a question of law to the jury. As we understand it, it simply tells the jury in making up their verdict they should take into account all such damages, whether present or future, as are shown by the evidence to be the necessary and direct result of the injury complained of. We see nothing improper in this. It was not necessary, nor, indeed, would it have been proper, for the instruction to have gone on and attempted to enumerate the various circumstances or possible contingencies in which appellee would probably suffer loss or inconvenience by reason of the injury. Nor was it necessary for the court, unless asked to do so, to define what was meant by the term "damages." In cases of this character the damages necessarily rest, to a large extent, in the discretion of the jury, for the law affords no measure or rule by which they may be even approximately ascertained. About all the court can do in such cases is to confine the jury, in their assessment, to such damages as are shown by the evidence to necessarily result from the injury complained of, and that was done in this case.

It is also contended the plaintiff failed to prove his case as laid in the declaration, and that the court therefore erred in not excluding the evidence from the jury. We do not concur in this view. The mistake of appellant on this branch of the case is in assuming that appellee bases his right of recovery exclusively upon "the original improper construction of the car." It is true the declaration proceeds upon this theory, but not upon this theory alone, for, as already shown, it is expressly averred in the amended declaration, that it was the duty of the defendant "to furnish for the use of its employees properly and carefully constructed cars, with

end ladders, side-handles and steps attached thereto;" and the declaration further on expressly negatives the performance of this duty. This being so, the plaintiff was not bound at his peril to prove both branches of his case,—it was sufficient if he proved either. It is a familiar doctrine of the law, that all torts are severable, and therefore in an action *ex delicto* it is immaterial that all the averments of the declaration are not proved as laid,—it is sufficient if such of them as are so proved show a good cause of action. Applying this principle to the question in hand, the position of appellant is clearly not tenable.

To the suggestion the declaration was fatally defective, and the motion to exclude the evidence should therefore have been sustained, it is sufficient to say that the defendant, by pleading to the merits, admitted the sufficiency of the declaration, and it is not readily perceived how its sufficiency could be subsequently raised by a mere motion to exclude the evidence from the jury. We are aware of no practice authorizing such a course. If the defendant desired to question the sufficiency of the declaration, it should have demurred, or moved in arrest of judgment. (*Chicago, Burlington and Quincy R. R. Co.* v. *Harwood*, 90 Ill. 426; *Roberts* v. *Corby*, 86 id. 182.) Having done neither, it is unnecessary to determine whether the plaintiff was bound to aver in the declaration he had no notice of the defective construction of the car, as the declaration was clearly sufficient after verdict.

Appellant also complains of the action of the court in refusing to give defendant's fifth instruction as asked, and in modifying it, and giving it to the jury as modified. The instruction, as originally drawn, is as follows:

"If the jury believe, from the evidence, that the plaintiff, in October, 1875, and in November, 1875, made written statements of the cause of the accident in question to the division superintendent of the defendant company, and that therein he

attributed the accident to the manner in which the engineer slacked up, and the way in which the car door slid, as well as to the absence of a step, and that such statements as to the cause were true, and the accident could not have happened if the engineer had not slacked up as he did, then the plaintiff can not recover under the declaration in this case, and the verdict should be not guilty."

The court, before giving this instruction, struck out the concluding words, "and the verdict should be not guilty," and added the following: "But the court further instructs the jury, that it is for them to determine whether any statements made by the plaintiff to the division superintendent correctly set forth the cause or causes of the accident, and from all the evidence, and under the instructions of the court, determine the issues in the case."

The instruction, as originally drawn, was properly refused. It not only gave undue prominence to certain parts of the testimony, but if given it would have tended to divert the attention of the jury from the main issue, namely, whether the injury to the plaintiff was caused by the negligence of the company in its failure to furnish the car in question with proper steps or end ladder, and would probably have caused them to decide the whole case upon a mere subordinate issue, namely, whether the plaintiff had not made previous statements relating to that subject, inconsistent with his present testimony. An instruction having such a tendency should never be given. It is very questionable whether the instruction, as given, was entirely relieved from its objectionable features in this respect, but it is very clear there is nothing in the modification of which the appellant has any just cause of complaint. *Hatch* v. *Marsh*, 71 Ill. 370; *Ogden* v. *Kirby*, 79 id. 555; *Evans* v. *George*, 80 id. 51; *Martin* v. *Johnson*, 89 id. 537.

It is also objected that the court erred in refusing to give the following instruction:

"In the absence of evidence tending to show that steps and handles are necessary to safety in coupling and uncoupling, the verdict should be not guilty."

This instruction was clearly erroneous, and was, therefore, properly refused. Instructions should be based upon evidence relating to the general or some particular aspect of the case, and it is the duty of the court to determine, in the first place, whether there is any evidence relating to the hypothesis assumed by a particular instruction. If, as contemplated by the instruction in question, there was no evidence tending to show steps or end ladders were necessary to safety in coupling and uncoupling, the jury should have been told to find for the defendant, for the plaintiff's whole case depended upon the negative of that hypothesis. On the other hand, if, in the opinion of the court, there was such evidence, it was not applicable to the case made by the proofs, and was therefore calculated to mislead. But the manifestly fatal objection to the instruction is in referring the question whether there was any evidence upon the point covered by the instruction, to the jury. That, of course, is a pure question of law, which the court alone should have determined.

In this connection it is urged, with much earnestness and apparent confidence, there was no evidence before the jury tending to show that steps or ladders at the ends of cars were necessary to safety in coupling and uncoupling. The evidence certainly tends to show that it was customary and proper to sometimes make couplings and uncouplings when trains were in motion, and for this purpose the party performing the service had, by some means or other, to pass either from the side or top of the car to the dead-wood, in the center of the end of the car, and in doing so it is manifest something was required to rest the foot on or hold by, if not both. To meet this requirement, as is shown by the evidence, some cars are provided with platforms on the ends, while most of them at that time were furnished with something like ladder rounds,

attached to the ends of the cars, both at the top and bottom, those at the top being used mainly for hand hold, and those at the bottom to stand on. The former were called "handles," and the latter "steps." Sometimes these rounds extended all the way up, from top to bottom, and then they are called "ladders." It will be borne in mind the negligence complained of is the failure of the appellant to furnish either the steps, handles or ladder, and the evidence shows the car in question had none of these appliances, or any of any kind whatever. Now, when it is considered the evidence does show, or at least tends to show, that it was one of the duties of appellee, as he swears it was, to couple and uncouple cars when the train was in motion, and this could not be done with safety, if at all, without some of these appliances, or others answering a like purpose, and that in the present case there were none of any kind, and that, as appellee positively swears, by reason of their absence the injury complained of occurred, it is difficult to conceive how it can be seriously contended there was no evidence before the jury tending to show that these steps, handles or ladder were necessary. The very fact the evidence tends to show they are, or at least were at that time, in general use, is certainly some evidence they were so regarded at that time.

It is also objected that the trial court erred in refusing to give appellant's second instruction as asked, and also in modifying it, and giving it to the jury as modified. From the proofs in this case there is little, if any, ground to doubt the appellant was using on its road other cars without end steps or ladders besides the one in question, and there is also evidence tending to show this fact was known to the appellee. Assuming that a part of the appellant's cars then in use were of that kind, and that the appellee had knowledge of the fact, it was clearly his duty, before attempting to pass from the side to the end of the car in the manner he claims he did, for the purpose of uncoupling it, to have ascertained whether

it was one of that kind or not, and if he found it was, it certainly would have been negligence on his part to attempt to make the coupling in the manner he did.    Now, with a view of directing the attention of the jury specially to this aspect of the case, appellant's counsel asked the court to give the jury the following instruction, being the one just alluded to: ·

"The jury are instructed, as a matter of law, that it was the duty of the plaintiff, before attempting to uncouple the car in question, to use ordinary and reasonable care to ascertain whether it was safe to do so, or not, while the train was in motion; and if the jury believe, from the evidence, that it was not safe for the plaintiff to uncouple said car at the time he attempted it, and that the plaintiff knew, or might by the exercise of ordinary care have known, that it was not safe to attempt it, then the plaintiff can not recover, and the verdict should be for the defendant."

—Which the court refused to do, but gave as a substitute for it the following:

"The jury are instructed, as a matter of law, that it was the duty of the plaintiff, in attempting to uncouple the car in question while the train was in motion, to exercise great care and caution to prevent being injured; and if the jury believe, from the evidence, that it was not safe for the plaintiff to uncouple said car at the time he attempted it, and that the plaintiff knew, or might by the exercise of ordinary care have known, that it was not safe to attempt it, then the plaintiff can not recover, and the verdict should be for the defendant."

We perceive no objection to the instruction as originally asked.    As drawn it would have accomplished the object for which it was prepared,—the substitute did not.    The original told the jury, in plain, unequivocal terms, "it was the duty of the plaintiff, *before attempting to uncouple the car in question,* to use ordinary and reasonable care *to ascertain whether it was safe to do so, or not, while the train was in motion."*    Now,

this proposition (the leading one in the instruction, and which, under the proofs, is entirely accurate,) is not found in the substitute, nor is its equivalent.   To tell the jury, as was done in the substitute, "that it was the duty of the plaintiff, in attempting to uncouple the car while the train was in motion, to exercise great care and caution to prevent being injured," is quite a different thing from telling them that it was his duty *before* attempting to uncouple the car, to use ordinary and reasonable care *to ascertain* whether it was safe to do so, or not, while the train was in motion.   The care and diligence contemplated by the original instruction, on the part of the plaintiff, was required to be exercised *before* attempting to uncouple the car; that contemplated by the substitute, *while* attempting to uncouple.   The two ideas are radically distinct, as will fully appear from a moment's thought.   Under the substitute, so far as the first proposition in it is concerned, the jury might very well have concluded, that however rash and grossly negligent the undertaking may have been, yet if the plaintiff used due care and caution *while* the coupling was being attempted, he might nevertheless recover; and conceding this view is modified by the latter branch of the instruction, still the instruction, as a whole, was sufficiently uncertain as to have misled the jury,—at any rate, it did not state the proposition of law announced by the original instruction, and can not, in any legal sense, be regarded as its equivalent.

We are of opinion the court erred in refusing the instruction as asked, and the judgment should have been reversed by the Appellate Court for that reason.   An error of this kind, as is well known, does not, and ought not, always to reverse; but every case in this respect must depend upon its own circumstances.   Where the reviewing court can see the case has been fairly tried, and that the judgment is clearly right upon the facts, and that consequently another trial must necessarily result the same way, it will not reverse on

the ground an erroneous instruction may have been given or a proper one has been refused. Quite a different rule prevails where the case is a close one on the facts. In such a case, where the evidence is about evenly balanced, the reviewing court will reverse for any substantial error in the trial court on a material question, that may have turned the scale in favor of the successful party. The present case we regard as coming within this rule.

The judgment of the Appellate Court is reversed, and the cause remanded, with directions to reverse the judgment of the circuit court and remand the cause for further proceedings in conformity with this opinion.

*Judgment reversed.*