Bertie Lee Robinson, Administrator of Estate of James Robinson, deceased, Plaintiff-Appellee, v. William F. Workman, Defendant-Appellant.

Gen. No. 10,014.

Third District.

October 14, 1957.

Released for publication October 30, 1957.

26

George P. Proctor, of Lewistown, for appellant.

Ezra J. Clark and James F. Scott, of Canton, for appellee.

PRESIDING JUSTICE CARROLL delivered the opinion of the court.

Upon previous consideration of this appeal, we reversed the judgment of the Circuit Court of Fulton county and remanded the cause for a new trial on the ground that the verdict was against the manifest weight of the evidence. (7 Ill.App.2d 42.) The Supreme Court having granted leave to appeal, held that while the judgment of this court purportedly was based upon a conclusion that the verdict was against the manifest weight of the evidence, it in fact rested solely upon the determination that there was no evidence in the record to support the verdict. Holding that there was sufficient evidence in the record to support the allegations of plaintiff's complaint and that since the question of manifest weight of the evidence had not been properly considered, the judgment of this court was reversed and the cause remanded here with directions to affirm the judgment of the trial court if no further reversible error is found. (Robinson, administratrix, v. Workman, 9 Ill.2d 420.)

Errors which it is claimed warrant reversal other than those urged upon the theory that there was no evidence to support the material allegations of the complaint, with which we are no longer concerned, are (1) that the verdict was against the manifest weight of the evidence; (2) that the trial court erred in giving certain of plaintiff's instructions and (3) that the verdict of the jury was excessive.

The action was brought to recover damages for the wrongful death of James Robinson, alleged to have been caused by the wilful and wanton misconduct of the defendant in operating his automobile in which the decedent was riding as a guest. The complaint alleged

28

decedent to be free of contributory fault and the specific acts of misconduct charged therein against the defendant are that he: (a) drove and operated his said automobile across the center line from the proper and lawful line of traffic traveling in a westerly direction and into and along the opposite lane or line of traffic for traffic proceeding in an easterly direction; (b) that the defendant after having operated and driven said automobile across said center line did drive and operate said automobile in, along or on said traffic lane at a high and dangerous rate of speed; (c) and did drive and operate his said automobile so as to come into violent collision with an automobile then and there being driven in a generally easterly direction by one Karolyn Woodcock.

A jury trial resulted in a verdict of $20,000 for plaintiff.

The facts as to the actual occurrence are not in dispute. At about 5:30 P.M. on November 4, 1953, the station wagon owned by defendant and in which he and the deceased were riding while traveling west on state Route 9 at a point about 2 miles East of Canton, Illinois, collided with an east bound car driven by Karolyn Woodcock. The impact overturned the station wagon and it came to rest upside down on the north side of the road. Robinson was killed in the collision. The bodies of both were found in the car. The only eyewitnesses to the accident were the 3 occupants of the 2 vehicles involved. The defendant was incompetent to testify and Woodcock was unable to remember anything immediately prior to or at the time of the accident.

Plaintiff's contention that the verdict of the jury was against the manifest weight of the evidence requires an examination of the evidence. Since no eyewitness testified as to the identity of the driver of the car, the proof on this issue was necessarily circum-

29

stantial. Circumstances shown by the evidence are that the station wagon was owned by defendant; that the decedent had no driver's license nor had he owned or driven an automobile since the late 1930's; that one of defendant's shoes was found after the accident wedged on the floorboard near the accelerator; that defendant's other shoe was found between the seats; and that decedent's body was found against the passenger door of the front seat. This evidence does not appear to be in dispute. A number of persons who arrived at the scene of the accident prior to the removal of either Workman or Robinson testified that the station wagon was overturned and resting on its top. While not in exact agreement as to the position of Workman in the car, they appear to have stated in general that he was unconscious and lying on the inverted top of the station wagon between the front and rear seats. A photograph of the interior of the station wagon shows the steering wheel bent and broken. There is also evidence that the injuries to the deceased were about his head and face. A doctor who examined the defendant testified that he observed a cut on defendant's chin, a deep laceration on his left heel which required suturing; and that blood was exuding from both his ears.

Herbert Leach, a witness called by plaintiff, testified that at about 5:30 on the evening in question, he was driving West on Highway No. 9 towards Canton; that he was accompanied by one John Looker; that it was very dark; that defendant's station wagon passed him going in the same direction at a speed of around 45 to 50 miles per hour; that he followed the Workman car for some distance and observed it weaving from one side of the road to the other; that it was traveling in such an erratic manner that he remarked to Looker, "look at the way they are driving . . . they are going to have an accident"; that Looker said, "they have hit that car coming from the other way"; and that a

short time later they came upon the scene of the accident.

Floyd Schumacher testified that in the early evening of the day of the accident, he was driving his truck west on Route No. 9; that he came upon two other cars proceeding in the same direction; that the car nearest to him was that driven by Herbert Leach; that the other car traveling ahead of Leach was the defendant's station wagon; that as the witness attempted to pass the Leach car, he noticed the station wagon was being driven rather erratically; that the witness was afraid to pass and remained behind the Leach car until they came to the scene of the accident; that during the time he travelled behind the Leach car and the station wagon, he twice saw the latter go to the left hand side of the road and off on the shoulder and then go back to the right side of the road and off on to the right shoulder.

The evidence further shows that at the time of the occurrence, the weather was good and the pavement dry and that at the point of impact the Woodcock car was being driven on its own or south half of the highway. Plaintiff also introduced evidence that the decedent was a man of careful and cautious habits and such evidence was not contradicted.

Substantially, the foregoing represents the proof in the record. Since the Supreme Court has determined it to be sufficient to make out a prima facie case for plaintiff, the issues as to the identity of the driver of the station wagon, as to whether the defendant was guilty of wilful and wanton misconduct and as to whether plaintiff's decedent was free from similar misconduct, all became fact questions to be determined by the jury.

■ Where a jury passes upon disputed questions of fact, its findings will not be set aside as being against the manifest weight of the evidence unless it

appears that such findings are clearly or palpably against and contrary to the manifest weight of the evidence. Bartels v. McGarvey, 331 Ill. App. 275; Howard v. Baltimore & Ohio Chicago Term. Ry. Co., 327 Ill. App. 83; Ashby v. Irish, 2 Ill.App.2d 9.

■ The presence of contradictory evidence in the record affords no basis for a reviewing court's disagreement with the conclusion reached by the trier of the facts. A jury verdict cannot be said to be against the manifest weight of the evidence unless an opposite conclusion is clearly evident. Dinger v. Rudow, 13 Ill.App.2d 444; Anderson v. Launer, 13 Ill.App.2d 530; Olin Industries, Inc. v. Wuellner, 1 Ill.App.2d 267.

■ Upon a careful examination of this record, we cannot say that the verdict of the jury was against the manifest weight of the evidence.

■ Defendant also contends that the trial court erred in giving plaintiff's Instructions 17, 21, 22, 24 and 25. Instruction 17 recited the provisions of Sec. 1 of the Injuries Act. Defendant's criticism is that it did not require plaintiff in a guest case to prove wilful and wanton misconduct and permitted the jury to return a verdict on proof of mere negligence on the part of the defendant; that it is peremptory and that it gave undue emphasis to the statutory limit of recovery. This instruction is substantially in the language of the statute and makes it plain that plaintiff could maintain her action only if the "wrongful act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action . . .". By defendant's Instruction 17, the jury were advised as to the provisions of the so-called "Guest Act". Defendant's Instruction 20 also informed the jury that plaintiff could only recover upon proof that the death of plaintiff's decedent was proximately caused by the wilful and wanton misconduct of the

32

defendant. The giving of plaintiff's Instruction 17 did not constitute error.

██ ██ The complaint as to Instructions 21 and 22 is that the jury were thereby referred to the charges in the complaint without informing them of what these charges consisted. By Instruction 21 the court defined the phrase "wilful and wanton misconduct" as used in plaintiff's complaint. The jury were in effect informed by Instruction 22 that if it found defendant guilty of wilful and wanton misconduct as defined by the court, then failure of the plaintiff to exercise ordinary care for his safety would not excuse the defendant. Neither instruction referred the jury to the charges in the complaint and are not vulnerable to defendant's objection. Instruction 24 correctly advised the jury that in determining the degree of care exercised by the deceased, at and immediately prior to the accident, they might consider evidence of his general habits. The record discloses that plaintiff introduced evidence that plaintiff's decedent was a man of careful and cautious habits. The jury could not have been misled or confused by Instruction 24. Instruction 25 is on the measure of damages and appears to be what is generally regarded as a stock instruction on that subject. Proof was introduced on all elements as to damages which are included in the instruction. In McFarlane v. Chicago City Ry. Co., 288 Ill. 476, the court approved an instruction substantially the same as Instruction 25.

██ In considering instructions, the test is not whether each individual instruction is free of every technical objection which may be directed against it but rather whether the instructions when considered together were sufficiently clear so as not to mislead the jury. Hulke v. International Mfg. Co., 14 Ill.App.2d 5; Chicago City Ry. Co. v. Shaw, 220 Ill. 532.

When all of the instructions given in the instant case are considered as a whole, we think a firm basis is afforded for concluding that the jury was not thereby misled.

█ The final contention of defendant is that the verdict is excessive. In an action for wrongful death, the amount of damages to be awarded by the jury cannot be determined by an inflexible rule or with mathematical certainty, but rests largely within the sound discretion of the jury. O'Fallon Coal Co. v. Laquet, 198 Ill. 125; Parthie v. Cummings, 323 Ill. App. 296.

█ The damages awarded are to be estimated by the jury from the facts proved and under the instructions of the court and must be compensatory. The jury's award is also subject to the rule that where its findings are evidently the result of passion or prejudice, the same will be set aside. From an examination of the record in this case, we are convinced that the verdict finds support in the evidence and that in returning the same, the jury were not motivated by passion or prejudice.

After careful consideration of this record, we are of the opinion that it contains no reversible error and accordingly the judgment of the trial court is affirmed.

Affirmed.

ROETH, J., took no part.