L. D. BRINKMAN AND COMPANY-MIDWEST *et al.*, Plaintiffs-Appellants, *v.* NATIONAL SPONGE CUSHION CO. *et al.*, Defendants-Appellees.

First District (5th Division)    No. 78-1018

Opinion filed August 31, 1979.

684

Clausen, Miller, Gorman, Caffrey & Witous, P. C., of Chicago (James T. Ferrini, John B. McCabe, and Patricia N. Hale, of counsel), for appellants.

Gottlieb and Schwartz, of Chicago (Jack B. Schmetterer, of counsel), for appellee General Felt Industries, Inc.

Hubbard, Hubbard, O'Brien & Hall, of Chicago (Alvin G. Hubbard and Paul V. Kaulas, of counsel), for appellee National Sponge Cushion Co.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiffs L. D. Brinkman and Company-Midwest (Brinkman) and Klefstad Companies, Inc. (Klefstad) brought this product liability action against National Sponge Cushion Company (National Sponge) and its corporate successor, General Felt Industries, Inc. (General Felt). The trial court ordered separate trials, in the first of which judgment was entered on a jury verdict in favor of National Sponge and against plaintiffs. Subsequently, an order of summary judgment was entered in favor of General Felt on the basis that its liability, if any, was purely derivative.

On appeal, the issues presented are (1) whether the trial court improperly denied plaintiffs' motion for judgment *n.o.v.* against National Sponge; and (2) whether, in the event entry of judgment *n.o.v.* here for plaintiffs is not warranted, we should order a new trial against both defendants on one or more of the following grounds—(a) that the verdict was against the manifest weight of the evidence, (b) that the trial court erroneously denied the motion of Brinkman for a directed verdict on the question of assumption of risk, and (c) that incomplete impeachment and certain conduct of defense counsel deprived him of a fair trial.

This case arose from a fire which occurred in the main warehouse operated by Walter E. Selck and Company, Inc. (Selck), now known as Brinkman, a distributor of flooring products. Selck leased the warehouse from 7125 Gunnison Building Corporation, to which Klefstad is assignee, and among the products stored in it was sponge rubber carpet cushion manufactured by National Sponge. In the section of the building where the fire began, there were six storage racks. At the base of each such rack was a bin, and five of the bins contained rolls of National Sponge carpet cushion with other rolls stored elsewhere in the warehouse. Each roll measured approximately 18 to 20 inches in diameter and 54 inches wide and was wrapped first in paper and then in burlap, exactly as it had been shipped from National Sponge. Approximately 600 square feet of the carpet cushion was stored in this section of the building. Each of the storage racks had shelves approximately eight feet above the ground, upon which were stored rolls of Nafi padding (made of hair and burlap) and which were manufactured by another company. In terms of fire-fighting equipment, the warehouse had a sprinkler system, fire hose and alarm system, as well as at least 30 fire extinguishers located throughout the building.

It appears that a steel upright on one of the storage racks described above became bent, and Selck hired Peterson Welding Company to cut out the damaged part and replace it with a straight piece. On January 24, 1968, Allan Sims, a Peterson welder, arrived to perform the job. Before starting his work, he told Richard Cummings, a Selck employee, that some of the rolls would have to be removed from the area so the welding could begin. Bernard Johnson (Selck plant superintendent), who was also present, ordered Tom Kelly (another Selck employee) to remove the rolls from the bin at the bottom of the damaged rack as well as some other materials nearby. Then, when Sims said the area still was not suitable, a tarpaulin was spread around the area where the welding was to be done as well as over the rolls in the bin. Cummings then secured a fire extinguisher, which he held in his hands with the pin removed as Sims proceeded with the repair. In doing so, he climbed into the empty bin and, facing outward into an empty center aisle, began cutting into the upright. While he was working in the bin, Cummings saw a spark fly over Sims' shoulder and land on a roll of National Sponge carpet cushion which was not covered by the tarpaulin. In describing the events which followed, Cummings testified that the burlap wrapping on the roll "started like a bunch of sparklers on the Fourth of July"; that sparks were "jumping all over" onto other uncovered rolls; that he started spraying with the fire extinguisher but the flames spread; and that eventually the sponge rubber began to burn also. While, on cross-examination, he stated that he never actually saw the sponge rubber burning, he also stated that

the entire bottom rack of sponge rubber was burning. Johnson testified that the flames he first saw were three to four inches above the surface of the padding and that the rubber was burning and not the burlap wrapping. Sims in turn testified that he did not see what was burning other than the burlap.

At any rate, from the testimony of all three, it appears that the fire spread at a very quick pace, with Cummings testifying that he had never seen a fire burn that rapidly, and Sims stating that while he had seen burlap burn before, this was the fastest fire he had ever observed. At some point, Cummings yelled, "Fire," and jumped up on some of the rolls and sprayed an extinguisher at the base of the flames. Sims had also attempted to fight the fire with an extinguisher, and Johnson—alerted by Cummings' verbal warning—telephoned the company operator and instructed her to call the fire department. According to Cummings, the warehouse sprinkler system activated in a couple of seconds, but the flames continued to spread, creating a great deal of black smoke and fumes. More Selck employees arrived to combat the fire by using every available extinguisher and a garden hose.

These efforts had no effect, however, and when the Norwood Fire Department arrived, the Selck men evacuated the building at Johnson's order. The firemen hooked up two engines and immediately called for assistance, and soon the Rosemont Fire Department arrived. After three hours, approximately one-half million gallons of water were applied to the blaze, and while the flames were temporarily extinguished on occasions, the rolls would soon reignite. Later, the firemen immersed the rolls in the loading dock which had been flooded with water but, upon removing them from the water, they again burst into flames. The fire was generally so persistent that it was necessary for the firemen to remain on the scene for three days. It caused extensive damage to the steel roof and supports, storage racks, as well as the goods stored in the warehouse, and it was necessary for Selck to interrupt its business operations while the building was being restored.

Brinkman and Klefstad brought suit against National Sponge and its corporate successor, General Felt. After several counts were dismissed, either on motion or by agreement, plaintiffs' sixth amended complaint alleged that the sponge rubber padding, excluding the burlap and paper wrapping, was in a defective condition and unreasonably dangerous in that it was easily ignited, burned at a rapid rate, was inextinguishable by conventional methods once it began to burn, and bore no warning concerning these characteristics. The complaint also alleged that, as a proximate result of the unreasonably dangerous condition of the padding, it ignited and burned in such a manner as to cause property damage, interruption of business and lost profits to Brinkman in the amount of

$880,431.20, as well as property damage to Klefstad in the amount of $86,580.65. Defendant National Sponge raised the affirmative defense of assumption of risk against both plaintiffs, alleging that plaintiffs had knowledge that the padding was flammable but nevertheless allowed welding in the vicinity of the padding without removing the padding or otherwise preventing its ignition. Such conduct, they asserted, was the proximate cause of the damages occasioned to plaintiffs.

At the close of the evidence, plaintiffs moved for a directed verdict on the question of assumption of risk, and the trial court granted the motion as to Klefstad only. The jury then returned a verdict in favor of National Sponge, and judgment was entered thereon. Plaintiffs' alternative motion for judgment *n.o.v.* or for a new trial was denied, and the trial court then entered summary judgment in favor of General Felt on the basis that its liability was solely derivative to that of National Sponge.

Opinion

We first examine plaintiffs' contention that the verdict was against the manifest weight of the evidence and that the trial court should have granted their motion for a new trial. A new trial is warranted if the verdict is contrary to the manifest weight of the evidence (*Mizowek v. DeFranco* (1976), 64 Ill. 2d 303, 356 N.E.2d 32; *Carman v. Dippold* (1978), 63 Ill. App. 3d 419, 379 N.E.2d 1365), and a verdict is properly viewed as such where an opposite conclusion is clearly evident or if the verdict appears palpably erroneous (*Bouillon v. Harry Gill Co.* (1973), 15 Ill. App. 3d 45, 301 N.E.2d 627). Further, the fact that we or the trial judge may reach a conclusion different from that of the jury is of no significance. *Rhodes v. Oliva* (1973), 13 Ill. App. 3d 849, 301 N.E.2d 126.

Plaintiffs alleged in their complaint that defendants' sponge rubber padding was defective and unreasonably dangerous in that it was easily ignited; that it burned at a rapid rate; that it was inextinguishable by conventional methods once it began to burn; and that it contained no warnings as to its extreme flammability. It is unclear as to whether the fire started in the padding (the product alleged to be unreasonably dangerous) or in the wrapping (not a subject of this suit). Johnson testified that the padding began to burn immediately and it did not appear to him that the wrapping was burning. Cummings, however, testified that the wrapping burned "like a bunch of sparklers on the Fourth of July" and that these sparks "jumped all over" onto other rolls; but, he admitted on cross-examination that he did not actually observe the padding burn. Further, Sims stated that it first seemed "like a burlap was burning" and, when asked whether anything within the rolls was burning, he responded, "I just seen a fire." There was, however, uncontradicted

testimony that the fire, once it commenced, burned at a very rapid pace. *Cummings* stated that the fire spread the full length of the warehouse aisles in one or two minutes and that he had never seen a fire spread so quickly. Sims likewise testified that it was the fastest developing fire he had ever seen. Equally, the evidence seems to be uncontradicted that the padding, once ignited, was virtually inextinguishable by conventional means. *Cummings* stated that he immediately sprayed the base of the flames with the fire extinguisher when the fire began and that the sprinkler system soon activated, but that neither action had much effect. Johnson testified that about eight Selck employees attempted to battle the fire, using all available fire extinguishers as well as a garden hose. Walter Schoenfield, Chief of the Norwood Fire Department, testified that he was at the scene of the fire; that it was necessary for firemen to stay at the scene for three days to extinguish the fire; that after spraying the rolls with water they would reignite spontaneously; that the rolls were immersed in a flooded loading dock but that upon removal therefrom they reignited; and that in his 31 years on the fire department, he had never seen anything harder to extinguish than the fire in the rolls.

Dr. Malcolm Reider, an expert witness for plaintiff, testified that he is a chemist—owning two research and testing firms; that he conducted various tests on samples of sponge rubber padding manufactured by defendant at the time of the fire; that his tests showed the padding would ignite spontaneously upon being exposed to heat without actually coming in contact with the flame; that the product was "exceedingly flammable" and once ignited "did not show any tendency toward self-extinguishment"; that based on his research in the area of consumer products, the purchaser of such padding would be unaware of these characteristics; that several fire retardants were available to defendant in 1967 which could have been added to decrease the extreme flammability of the padding; that in his opinion the padding should have contained a warning, advising that it was extremely combustible and could not be extinguished by ordinary methods—such as water or carbon dioxide extinguishers; and that, in his opinion, the product was "exceptionally dangerous and hazardous."

Defendant offered no expert testimony to contradict Dr. Reider's opinions, but did introduce an evidence deposition of Mark Robbins in which he testified that he worked as a chemist for National Sponge at the time of the fire. While admitting he was not a flammability expert, Robbins said that he had conducted tests on defendant's product as well as those of competitors and found no differences among them; that it was common knowledge in the sponge rubber industry that padding burns; and that, in his opinion, "the material for which it was designed to be used was not dangerous or hazardous." He stated also that in 1970, after a fire at a nursing home, the Federal Government required sponge rubber

paddings to meet the minimum flammability requirement of a test known as the "pill"; and that in approximately three months defendant developed a padding which met those requirements.

Homer Alexander testified for defendant that in 1955 through 1975, he was a buyer in the floor covering department of Sears Roebuck & Co.; that from 1960 through 1970, he purchased padding from several companies, including National Sponge; that flammability tests were conducted at his direction, but not until after the Federal regulations went into effect (which was after the fire in the instant case); and that he never saw any padding manufactured by any company which bore a warning label as to flammability. On cross-examination, he admitted that he was not an engineer, chemist, or a "person who holds themselves out to have knowledge of flammability of fabrics and materials." Calvin Yuill, an employee of a nonprofit industrial research firm testifying for defendant, described the nature of the pill test adopted by the Federal Government in 1970 but, on cross-examination, admitted he did not study the fire propensities of sponge rubber and was not made familiar with the facts of the instant case.

■■ In the light of the above, we are unable to say that an opposite conclusion is clearly evident or that the verdict was palpably erroneous and, accordingly, we hold that it was not against the manifest weight of the evidence.

■■ Turning to the question of whether judgment *n.o.v* was improperly denied, we note that in reviewing a trial court's denial of such a motion, we need only determine whether all of the evidence, when viewed in its aspect most favorable to defendant, so overwhelmingly favored plaintiffs that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504; *Kavanaugh v. Interstate Fire & Casualty Co.* (1975), 35 Ill. App. 3d 350, 342 N.E.2d 116; *Zwikel v. W. F. Hall Printing Co.* (1972), 7 Ill. App. 3d 853, 289 N.E.2d 111.) However, this requires an even more nearly conclusive evidentiary situation than does the "manifest weight of the evidence" standard (*Mizowek v. DeFranco; Pedrick v. Peoria & Eastern R.R. Co.*), and since we concluded above that the verdict was not against the manifest weight of the evidence, we cannot say that plaintiffs' motion for judgment *n.o.v.* was improperly denied.

Plaintiffs, however, also contend that a new trial should be granted because of (1) error in the submission to the jury of the assumption of risk defense as to Brinkman; (2) four instances of incomplete impeachment of plaintiffs' witness Johnson; and (3) improper comments of defense counsel during his opening statement and during closing arguments.

Assumption of risk is an affirmative defense to a products liability action in Illinois. (*Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d

418, 261 N.E.2d 305; Restatement (Second) of Torts §402A, comment n (1965).) In *Ralston v. Illinois Power Co.* (1973), 13 Ill. App. 3d 95, 299 N.E.2d 497, we explained that:

> "Essentially, an individual assumes a risk when that person recognizes and understands the dangerous condition of a product and yet voluntarily and unreasonably proceeds to use the product 'in disregard of this known danger.' (*Sweeney v. Matthews & Co.* 46 Ill. 2d 64, 66, 264 N.E.2d 170, 171.) In other words, the party expressly or implicitly consents to taking his chances of harm from a particular risk known to him and created by a manufacturer. *Denton v. Bachtold Bros., Inc.*, 8 Ill. App. 3d 1038, 291 N.E.2d 229." (13 Ill. App. 3d 95, 98, 229 N.E.2d 497, 499.)

Thus, the inquiry must focus upon the personal knowledge of the individual involved as well as his understanding and appreciation of the danger, rather than that of the reasonably prudent person. (*Williams v. Brown Manufacturing Co.*; *Ralston v. Illinois Power Co.*) In *Doran v. Pullman Standard Car Manufacturing Co.* (1977), 45 Ill. App. 3d 981, 360 N.E.2d 440, we explained this concept further and noted that the Restatement (Second) of Torts was instructive:

> "Section 496D of the Restatement (Second) states this sometimes overlooked contour of assumption of risk as follows:
>
> > 'Except where he expressly so agrees, a plaintiff does not assume a risk of harm arising from the defendant's conduct unless he then knows of the existence of the risk and appreciates its unreasonable character.'
>
> Moreover, as Comment (c) explains, the question is not whether he should have realized the risk but whether, in fact, he did realize it:
>
> > 'The standard to be applied is a subjective one, of what the particular plaintiff in fact sees, knows, understands and appreciates.' "

(45 Ill. App. 3d 981, 990-91, 360 N.E.2d 440, 447.)

Further, a decision as to whether a plaintiff has assumed the risk of an unreasonably dangerous product is to be based upon the particular circumstances of each case. *Doran v. Pullman Standard Car Manufacturing Co.*; *Scott v. Dreis & Krump Manufacturing Co.* (1975), 26 Ill. App. 3d 971, 326 N.E.2d 74.

■■ In conjunction with the above-stated law, a determination of whether the affirmative defense of assumption of risk should be stricken rather than submitted to the jury must be predicated upon a consideration of the totality of the evidence in its aspect most favorable to defendant. (*Williams v. Brown Manufacturing Co.*; *Ralston v. Illinois Power Co.*; see *Pedrick v. Peoria & Eastern R.R. Co.*) Turning to the case at bar, we note that the only evidence defendant points to in support of its theory

that Brinkman assumed any risk is the fact that Cummings held a fire extinguisher near as the welder began his work. Defendant argues that this showed that Cummings, as Brinkman's servant, "expected the welder to start a fire."

■■ In this regard, however, we believe the reasoning in *Sipari v. Villa Olivia Country Club* (1978), 63 Ill. App. 3d 985, 380 N.E.2d 819, is appropriate to the facts here. In that case, plaintiff was injured when a golf cart he was operating overturned. He brought a product liability action against the lessor of the cart, alleging that a design defect precipitated the accident. The trial court directed a verdict for defendant on the issue of assumption of risk. On appeal, this court in holding that not only was the directed verdict erroneously entered but that the defense should have been stricken, reasoned as follows:

> "Evidence was presented which indicated that the subject golf cart could be defective and dangerous due to its design. However, no evidence was presented to indicate that this danger was known to plaintiff, and that he voluntarily and unreasonbly [*sic*] assumed the risk of injury. No evidence was presented that plaintiff at any point discovered the hidden danger and unreasonably continued to proceed." (63 Ill. App. 3d 985, 991, 380 N.E.2d 819, 824.)

It appears to us that the evidence in the case at bar, as in *Sipari*, fails to indicate that a fact question existed concerning assumption of risk. Even considering the totality of the evidence in its aspect most favorable to defendant, we find no indication from our search of the record that Brinkman, through its servants, subjectively knew of or appreciated the defects of which it complained—the extreme flammability of the padding, the rapid spread of the resulting fire or the inextinguishability of the flames—or that it "at any point discovered the hidden danger and unreasonably continued to proceed." (63 Ill. App. 3d 985, 991, 380 N.E.2d 819, 824.) The fact that Brinkman's employee (Cummings) held a fire extinguisher in readiness while the welder was working is evidence only of the fact that he had knowledge some danger might result from the welding process; but, it cannot be considered as subjective knowledge of the extreme flammability of the padding and inextinguishability of the flames. We therefore conclude that the trial court erred in submitting this issue to the jury as to Brinkman.

■■■ Such conclusion leads to the question as to whether this error was so substantial as to deny either or both of the plaintiffs a fair trial. As stated in *Both v. Nelson* (1964), 31 Ill. 2d 511, 202 N.E.2d 494:

> "It is not every error, of course, that will require a reversal. Where it appears that an error did not affect the outcome below, or where the court can see from the entire record that no injury has been done, the judgment or decree will not be disturbed. (*Baker v.*

*Baker,* 412 Ill. 511; *Lindroth v. Walgreen Co.,* 407 Ill. 121; *Pease v. Kendall,* 391 Ill. 193.) But where the case is a close one on the facts, and the jury might have decided either way, any substantial error which might have tipped the scales in favor of the successful party calls for a reversal. (*Edwards v. Hill-Thomas Lime & Cement Co.,* 378 Ill. 180; *Chicago Burlington and Quincy Railroad Co. v. Warner,* 108 Ill. 538.)" (31 Ill. 2d 511, 514, 202 N.E.2d 494, 496.)

See also *Sims v. Chicago Transit Authority* (1955), 7 Ill. App. 2d 21, 129 N.E.2d 23, where an issue unsupported by the evidence was submitted to the jury and the court stated:

"The rule * * * is that unless the reviewing court can say that on retrial the result could not be otherwise, the cause must be remanded toward the end that the party bringing error may secure substantial justice. Where the reviewing court can see the case has been fairly tried, and that the judgment is clearly right upon the facts, and that consequently another trial must necessarily result the same way, it will not reverse on the ground that an erroneous issue has been submitted to the jury. Quite a different rule prevails where the case is a close one on the facts. In such a case where the evidence is about evenly balanced, the reviewing court will reverse for any substantial error in the trial court on a material question that may have turned the scale in favor of the successful party. [Citations.]" (7 Ill. App. 2d 21, 29, 129 N.E.2d 23, 26-27.)

In the case at bar, as stated above, the cause of action was predicated upon the alleged defective and unreasonably dangerous condition of the padding in that it was easily ignited, burned very rapidly, was inextinguishable by conventional methods, and no warnings were given as to its extreme flammability. Although there is doubt as to whether the padding or its wrapping first ignited, there appears no question that the padding did ignite—with an ensuing fire that not only spread very rapidly and resisted the usual extinguishing methods but also burned for three days, during which time it continued to reignite spontaneously even after being sprayed and doused with water. Thus, while we concluded above that the trial court properly found the verdict was not against the manifest weight of the evidence, we think that the facts as presented were close on the question of whether plaintiffs had established the elements of their causes of action. In the light thereof, we are of the opinion that the erroneous submission of the assumption of risk issue as to Brinkman was prejudicial to the extent that it may have tipped the scales in favor of defendants. We are further of the belief that although the issue was not submitted to the jury as to Klefstad, because of the similarity of the causes of actions of plaintiffs, we cannot say that the jury in finding against

Klefstad was not influenced by the submission of assumption of risk as to Brinkman.

■■ Defendants have also raised the question of mootness by a statement in their briefs as follows: "[T]he defense of assumed risk was asserted against plaintiff L. D. Brinkman etc. only. The finding of the jury against both plaintiffs renders the assumed risk defense moot." The only reference to mootness appears in its entirety in this quote with no discussion, argument, or citation of authority in support thereof. Bare contentions which are not supported by argument or by the citation of authority are waived. (*Village of Roxana v. Costanzo* (1968), 41 Ill. 2d 423, 243 N.E.2d 242; *People v. Brady* (1974), 23 Ill. App. 3d 330, 318 N.E.2d 642; *Ray v. Cock Robin, Inc.* (1973), 10 Ill. App. 3d 276, 293 N.E.2d 483, *aff'd* (1974), 57 Ill. 2d 19, 310 N.E.2d 9; *People v. Adams* (1969), 109 Ill. App. 2d 385, 248 N.E.2d 748.) Moreover, an appellee who raises an issue on appeal with not a single case cited or argument made in support does not comply with the requirements of Supreme Court Rule 341(f). (Ill. Rev. Stat. 1977, ch. 110A, par. 341(f).) In the light thereof, we consider any question of mootness to have been waived.

■■■ ■ Concerning plaintiffs' assertion that there were instances of incomplete impeachment of their witness Johnson, who was Brinkman's superintendent at the time of the occurrence and a key witness, we note that on four occasions Johnson on cross-examination was asked by defense counsel whether he recalled being asked certain questions and giving certain answers at a discovery deposition; that each time Johnson replied that he did not recall the exchange and defense counsel subsequently failed to offer any proof of the prior allegedly inconsistent statements. When an impeachment is attempted by means of a prior inconsistent statement and a foundation for the impeachment has been laid, proof of the prior statement is required. (*Blake v. Delhotel* (1976), 39 Ill. App. 3d 725, 350 N.E.2d 880; *Rigor v. Howard Liquors, Inc.* (1973), 10 Ill. App. 3d 1004, 295 N.E.2d 491; *Schoolfield v. Witkowski* (1964), 54 Ill. App. 2d 111, 203 N.E.2d 460.) The only exception to this rule occurs when the witness admits having made the prior statement. (*Rigor v. Howard Liquors, Inc.*; *Logue v. Williams* (1969), 111 Ill. App. 2d 327, 250 N.E.2d 159.) While there was other testimony as to the matter involved in the attempted impeachment of Johnson, we think that the questions improperly cast· doubt on his credibility.

■■■ The third irregularity complained of by plaintiffs concerns certain remarks of defense counsel. During his opening statement, he said that he "couldn't talk about" certain conversations and, in closing argument, he commented upon certain tests performed by Calvin Yuill, the results of which were not in evidence as follows:

"He did a test with reference to floor coverings, carpeting, and

determined—I guess I can't tell you what his determination is."

The law is clear that it is improper for counsel to imply in argument that there was information he wished the jury to know but could not present to them, thus implying that his opponent was denying the jury the opportunity to consider it. *Crutchfield v. Meyer* (1953), 414 Ill. 210, 111 N.E.2d 142; *Jacobson v. National Dairy Products Corp.* (1961), 32 Ill. App. 2d 37, 176 N.E.2d 551.

■■ Considering the totality of the circumstances here in the light of the closeness of the facts on the question as to whether plaintiffs had established the essential elements of their causes of action, we are of the opinion that the combination of error in submission of the assumption of risk issue as to Brinkman, together with the impropriety of the four incomplete impeachments of Johnson and the remarks of defense counsel as set forth above, deprived plaintiffs of a fair trial and, in the interest of fairness and justice, we believe that both should be granted a new trial.

■■ Furthermore, inasmuch as summary judgment in favor of General Felt was granted on the basis that any liability it might have was purely derivative, a new trial must be granted to it in the light of our conclusion as to National Sponge.

Accordingly, the judgments against plaintiffs in favor of defendants are reversed and the matter is remanded for new trial.

Reversed and remanded.

MEJDA and WILSON, JJ., concur.