ALFRED NAKIS, Plaintiff-Appellant, *v.* DANIEL AMABILE, d/b/a Tenement West, *et al.*, Defendants-Appellees.

First District (4th Division)    No. 80-2440

Opinion filed December 31, 1981.

Arthur S. Gomberg and Sheldon S. Gomberg, both of Chicago (Robert L. Caplan, of counsel), for appellant.

Robert L. Berkover and Stern, Rotheiser and Dupree, both of Chicago, for appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Alfred Nakis, appeals the trial court's refusal to direct a verdict in his favor as to count I (on liability), pursuant to section 14 of article VI of the Liquor Control Act (Ill. Rev. Stat. 1973, ch. 43, par. 135), and the trial court's granting of the defendants' motion for a directed verdict as to count II (common law negligence).

On October 31, 1975, plaintiff filed a complaint alleging in count I that defendants were the operators of a dram shop and were engaged in selling intoxicating liquors; that on July 25, 1975, defendants, by their agents, sold to certain customers alcoholic beverages which caused them to become intoxicated; and that as a consequence, plaintiff, while a patron in the tavern, was assaulted and injured by the intoxicated customers in violation of the Dramshop Act; and in count II that, alternatively, plaintiff was a patron in the tavern, and defendants had a duty to exercise due care and caution to see that the patrons conducted themselves properly with reference to the safety of others; that defendants permitted certain patrons to threaten and become dangerous to other patrons, including the plaintiff; and that defendants should have known of the conduct of the violent patrons, and it became the duty of defendants to protect plaintiff from injury by the abusive patrons.

On appeal, plaintiff presents the following issues for review: (1) whether the court erred in directing a verdict in favor of the defendants on count II of the complaint; (2) whether the court erred in refusing to grant his motion for a directed verdict; (3) whether the court erred in not allowing him to testify as to the intoxication of a second and third individual; (4) whether the court erred with regard to absent potential witnesses; (5) whether an affirmative statement in the pleadings denying allegations can be used as evidence that the pleader had knowledge of the facts in issue; and (6) whether improper argument and comment by defense counsel constitutes reversible error.

We affirm.

The testimony at trial was as follows. Plaintiff testified that on July 25, 1975, he went to the Tenement West in Melrose Park with his cousin, Andrew Sofiakis. As they entered, there were men who checked for

identification, requested admission charges, and gave them a chip that paid for the first drink. He and his cousin stopped at the bar and ordered a drink. Nakis stated that after going to the restroom he went back to the bar, took his drink, and walked toward the entrance to the dance floor. Sofiakis saw a friend and stopped to talk with her.

Plaintiff began dancing with a girl. Thereafter, because he was perspiring, he went to the bar to get some napkins. He saw a group of people at the bar, loudly laughing. He remembered having seen them there earlier when he had gone to the washroom. Plaintiff tapped one of them on the shoulder and asked for a napkin. That person turned, looked at him, and someone else pushed his face away, saying, "Get out of here." The person who pushed his face was intoxicated and his manner of speech was slurred. Nakis turned to put his drink down and the same person hit him in the face with his fist. At least five other people became involved, jumping on his back and completely ripping off his shirt. As he struggled to his feet, he was kicked and punched by everyone. Someone hit him again in the face; he fell to the floor again and a group of people kicked and punched him.

Nakis stated that he got up again and finally said, "All I wanted was a napkin." Then someone swung at him and five, six, or seven people again involved themselves in the fight. He grabbed the person who had hit him three times before and they fell to the floor together. When bouncers grabbed him from behind, he raised his arms to indicate that he had not initiated the fight. The other people wanted to proceed with the fight.

After the fight, the owner of the tavern took him to the restroom to clean himself. Plaintiff stated that his pants were full of blood and his shoes were cut up; and he had cuts on his back, chest, hand and palms of his hands. Plaintiff's face was numb, swollen and disfigured.

Plaintiff went to a hospital emergency room for medical attention and later he saw a medical doctor. Subsequently, he was admitted to the hospital where he stayed for 8 days.

Plaintiff did not call his cousin to testify and gave an offer of proof as to why his cousin could not come to testify. There were no other occurrence witnesses. The defense called no other witnesses to testify.

Defendants made a motion for a directed verdict with regard to both count I and count II. The trial judge granted the motion for a directed verdict as to count II only. The jury was given two special interrogatories with the verdict forms. They answered the interrogatory that found the person who hit plaintiff three times was not intoxicated. The jury returned a verdict for defendants and against plaintiff on count I.

Plaintiff contends that the court erred in directing a verdict in favor of defendants on count II, the common law count based upon the duty of an innkeeper to use ordinary care for the safety of the patrons. Further,

plaintiff asserts there was notice to the innkeepers that plaintiff might suffer injury after he was first hit in the face. Plaintiff concedes this first blow, but complains of the second and third blows in count II.

The rule is established that verdicts should only be directed "in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) Plaintiff contends that the evidence he presented was sufficient to avoid a directed verdict under the *Pedrick* standard. We disagree.

■■■ It is axiomatic that "A complaint for negligence must set out: the existence of a duty owed by the defendant to the plaintiff, a breach of that duty and an injury proximately resulting from the breach." (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 374, 308 N.E.2d 617, 618.) In *Gill v. Chicago Park District* (1980), 85 Ill. App. 3d 903, 905, 407 N.E.2d 671, 673, the court said:

> "Generally, there is no duty to protect one against the criminal attacks of third persons. [Citation.] A duty does not arise unless there are sufficient facts to put defendants on notice that an intervening criminal act is likely to occur. [Citation.] In short, the existence of a legal duty requires that the occurrence be reasonably foreseeable. [Citation.] In determining whether a legal duty exists, the likelihood of injury, the magnitude of the burden of guarding against it, and the consequence of placing that burden on the defendant must also be taken into account. [Citation.]"

■■ In the instant case, there was no indication of any notice to defendants that would have alerted them of the altercation. Plaintiff had ample opportunity to yell out for help or assistance. On the three occasions when he was struck by the same person, he never asked for assistance. According to plaintiff, after he was hit three times, other people became involved in the fight. Furthermore, plaintiff offered no testimony that the bouncers or the bartenders knew of this altercation in sufficient time to prevent it, nor was there testimony that there was a fight or yelling that would show that the owners of the establishment or their employees were called to the scene. Finally, the record is devoid of any evidence that shows the altercation was reasonably foreseeable by defendants or that defendants could have prevented it. Consequently, the trial court did not err by directing a verdict in favor of defendants on count II of the complaint.

Plaintiff contends the trial court erred in refusing to grant his motion for a directed verdict on count I on the issue of liability because his testimony was uncontradicted, unimpeached, and unequivocal, thereby justifying a directed verdict in his favor. Further, plaintiff's opinion testimony that the person who struck him was intoxicated adds to his position that the court erred.

■■ Plaintiff aptly points out that the controlling standard here is the *Pedrick* rule. However, the direction of a verdict in plaintiff's favor was not mandated when plaintiff's testimony stood unrebutted or uncontroverted. Even where testimony is uncontroverted, inconsistent inferences and conclusions may be drawn, thereby making the question one for the jury. (*Ruggiero v. Public Taxi Service, Inc.* (1973), 16 Ill. App. 3d 754, 758, 306 N.E.2d 567, 570.) Plaintiff's argument was considered in *Ladd v. Ruck* (1969), 108 Ill. App. 2d 379, 382-83, 248 N.E.2d 147, 149, where the court stated:

> "[P]laintiff insists that only one conclusion is warranted from the evidence * * *. This assertion is based on plaintiff's view that because defendants offered no evidence as a defense to plaintiff's claim or in opposition to the evidence of plaintiff, no controverted issue existed or could exist. Plaintiff believes this position to be supported by Pedrick v. Peoria & Eastern R. Co., supra, a position with which we do not agree. Facts may be undisputed or a defendant may have failed to introduce evidence in his behalf but it does not follow that issues are therefore uncontroverted. Undisputed facts may give rise to different reasonable inferences to be drawn therefrom. Genck v. McGeath, 9 Ill App2d 145, 132 NE2d 437. The question also arises as to whether undisputed facts do or do not tend to prove or disprove the issues in controversy. The Pedrick rule does not require that verdicts be directed * * * merely because a defendant has failed to introduce evidence in his own behalf or has failed to dispute facts presented by the plaintiff."

We find the rationale in *Ruck* controlling. Further, we disagree with plaintiff's contention that the jury improperly disregarded his testimony. It is well established that jurors are the sole judges of the credibility of witnesses and the weight to be given their testimony. (*Feldman v. Fitzpatrick* (1973), 11 Ill. App. 3d 617, 624, 297 N.E.2d 264, 269.) From our review of the record, we cannot say that the jury's finding was against the manifest weight of the evidence. Consequently, the trial judge did not err by submitting the issue of liability to the jury.

Plaintiff contends the trial court erred in not allowing him to testify as to the intoxication of a second and third individual. Plaintiff reasons that since the jury failed to find the person who assaulted him intoxicated, then he was deprived of two causes of action by the trial court's failure to admit plaintiff's opinion testimony that two other persons were intoxicated.

■■ At trial, the judge allowed plaintiff to testify as to the intoxication of the person who assaulted him. However, the judge did not allow plaintiff to testify as to the intoxication of a second and third individual. The judge indicated that this opinion testimony concerning two other individuals

would not be allowed because plaintiff did not sufficiently identify those persons, what they were doing, what they were wearing, and whether they were the same persons who were on top of him as he was fighting.

■■ In order to prove intoxication in a dramshop suit, plaintiff must give evidence that the alleged intoxicated person consumed alcoholic liquor, together with evidence of unusual behavior or opinion evidence that he was drunk, which would entitle a jury, under such circumstances, to conclude that the person was intoxicated. (*Weiner v. Trasatti* (1974), 19 Ill. App. 3d 240, 244, 311 N.E.2d 313, 317.) From a review of the record, we find that plaintiff did testify as to the alleged unusual behavior of two or three people who were a part of the group that beat him and that they were drinking beer. From this, the jury could conclude whether the persons were intoxicated. Consequently, we hold that the trial judge did not err by refusing further opinion testimony.

Plaintiff contends the trial court erred in permitting defendants to argue the adverse evidence presumption while refusing to allow plaintiff this argument. This presumption should not operate against plaintiff because defendants owners had ample opportunity to secure names of witnesses to the incident. Thus, the jury was entitled to think that since the defense offered no evidence, the evidence would probably have been adverse. Plaintiff also claims that his offer of proof as to the absence of Sofiakis was erroneously rejected by the court as hearsay, but the court allowed defendants to argue the absence of Sofiakis.

Plaintiff further asserts that defendants' answers denying allegations of the complaint are admissions of knowledge of the matters contained therein; consequently, it was error when the court refused to take judicial notice of these denials in order to show that defendants had this knowledge but did not testify.

■■ An unfavorable evidentiary presumption arises if a party, without reasonable excuse, fails to produce evidence which is under his control. (*Berlinger's, Inc. v. Beef's Finest, Inc.* (1978), 57 Ill. App. 3d 319, 325, 372 N.E.2d 1043, 1048.) This presumption usually operates in favor of the plaintiff. Once a *prima facie* case is established, the trier of fact may infer that available evidence not produced by defendant would be unfavorable to defendant. *Fuery v. Rego Co.* (1979), 71 Ill. App. 3d 739, 744, 390 N.E.2d 97, 101.

■■ In the case at bar, plaintiff argues that the unfavorable evidentiary presumption did not arise because he gave, by an offer of proof, a reasonable excuse for failure to bring Sofiakis to court. Plaintiff admits that this offer of proof was hearsay but insists that it was error for defense counsel to comment on Sofiakis' absence. We disagree with plaintiff. The failure of a litigant to call a witness within the control of such litigant is a proper subject of comment. (*In re Estate of Sandusky* (1943), 321 Ill. App.

1, 16, 52 N.E.2d 285, 291.) It may be open to doubt whether this rule of law applies to the failure of plaintiff to call as witnesses Dr. Broder and Dr. Karis, because it might be said that they were not under plaintiff's control. However, we believe that this rule of law properly applies to the failure of plaintiff to call his cousin, Sofiakis, as a witness. When neither party calls an available witness, whatever presumption will be indulged in from the failure to call such witness will be against the party to whose interest such witness would most likely incline, and failure to produce such witness is, in such case, a proper subject of comment. 321 Ill. App. 1, 17.

Applying the above rule to this case, we hold that defense counsel's remarks were not improper. Further, the trial court did not err by refusing to allow plaintiff's offer of proof.

■■ As to plaintiff's contention concerning judicial notice of defendants' denials, it is axiomatic that the court may take judicial notice of matters of public record. (*American National Bank & Trust Co. v. City of Chicago* (1971), 4 Ill. App. 3d 127, 130, 280 N.E.2d 567, 569.) However, our research reveals no dispositive Illinois cases which authorize a judge to take judicial notice of defendants' denials in order to show that defendants had knowledge of the matters contained in the complaint. Therefore, the trial court did not err by refusing to take judicial notice of defendants' denials.

■■ Finally, plaintiff contends there was improper conduct by defense counsel. Plaintiff maintains that defense counsel's statement, "I can't tell you where my clients are," sought sympathy from the jury and was so prejudicial as to require a new trial.

An examination of the record reveals that plaintiff objected to this comment and the objection was sustained by the trial court. This corrective action taken by the court, in our opinion, rendered harmless, in the context of the whole trial, any error that might have arisen as a result of this statement. (*Funk v. Venture Stores, Inc.* (1981), 94 Ill. App. 3d 115, 121, 418 N.E.2d 498, 503.) As the court stated in *Mayer Paving & Asphalt Co. v. Carl A. Morse, Inc.* (1977), 48 Ill. App. 3d 73, 80, 365 N.E.2d 360, 365-66, "A trial need not be free from error. Our concern is whether there was error which prejudiced the party seeking review or which unduly affected the outcome at trial." Since the error was cured at trial, we cannot say that defense counsel's comment by itself so materially prejudiced plaintiff that he was denied a fair trial.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

ROMITI, P. J., and JIGANTI, J., concur.