KATHLEEN TONARELLI, Adm'x of the Estate of George Tonarelli, Deceased, Plaintiff-Appellee, *v.* WILLIAM M. GIBBONS, Trustee, Defendant-Appellant.

First District (3rd Division)   No. 81—2995

Opinion filed February 15, 1984.

Lord, Bissell & Brook, of Chicago (Alvin E. Domash, Patricia F. Cross, and Hugh C. Griffin, of counsel), for appellant.

John D. Hayes and Associates, Ltd., and Ash, Anos, Freedman & Logan, both of Chicago (John D. Hayes, Joseph A. Power, Jr., and George J. Anos, of counsel), for appellee.

JUSTICE McGILLICUDDY delivered the opinion of the court:

The plaintiff, Kathleen Tonarelli, as the administratrix of the estate of George Tonarelli, brought an action for the wrongful death of George Tonarelli against the defendant, the Chicago, Rock Island and Pacific Railroad Company, a corporation (Rock Island).[1] George Tonarelli died when he drove a pickup truck onto the tracks at a railroad crossing and was struck by a Rock Island passenger train. The jury returned a $1,500,000 verdict for the plaintiff. The jury further found, under the doctrine of comparative negligence, that the decedent was 25% negligent. Accordingly, it reduced the verdict to $1,125,000. The trial court entered judgment on the verdict, and defendant appeals. The issues presented for review are: (1) whether the trial court erred in giving Illinois Pattern Jury Instruction (IPI), Civil, No. 5.01 (2d ed. 1971); (2) whether the evidence was sufficient to support the jury's finding; (3) whether remarks in the plaintiff's closing argument were improper; (4) whether the court erred in refusing to give an instruction on the taxability of the award; (5) whether

---

[1]This action was originally filed on June 11, 1975. Prior thereto the Chicago, Rock Island and Pacific Railroad Company had filed a petition pursuant to provisions of section 77 of the Bankruptcy Act in the United States District Court for the Northern District of Illinois. Therefore, William M. Gibbons, Trustee of the property of Chicago, Rock Island and Pacific Railroad Company was substituted as party defendant.

the verdict was excessive as a matter of law; and (6) whether the doctrine of comparative negligence as applied in this case violated the defendant's constitutional rights.

On September 22, 1969, George Tonarelli was driving south on Ridge Road in the western outskirts of Minooka, Grundy County, Illinois. The Rock Island train, consisting of a 15-foot-high diesel engine and six passenger cars, was traveling east at approximately 80 miles per hour. They collided at the Ridge Road crossing at 9:07 a.m. The truck left no skid marks on the pavement.

Ridge Road, which runs in a north-south direction, is a two-lane blacktop road with a speed limit of 35 miles per hour. Approximately 300 feet north of the crossing, a black and yellow sign warns southbound drivers that they are approaching a railroad crossing. A stop sign is posted about 400 feet north of the crossing at the intersection of Minooka and Ridge Roads. The two Rock Island tracks at the crossing run in an east-west direction, and begin a slight curve in a southwest direction about 300 feet west of the crossing. Whistle posts are stationed 368 and 363 feet west of the crossing. Two sets of red lights, designed to begin flashing 20 seconds before an eastbound train reaches the crossing, are mounted on stanchions in the northwest and southeast quadrants of the crossing. Each stanchion also supports a black and white railroad crossbuck warning sign and a rectangular sign advising that the crossing has two tracks. In 1969, 42 freight trains and eight passenger trains came through the crossing each day. The maximum train speed allowed by the railroad was 79 miles per hour.

No eyewitness to the accident testified at trial. The engineer of the train, Edward Johnson, died before the trial, and was dismissed as a defendant. The train fireman, Lee Horst, who rode in the engine at the time of the collision, was originally named a defendant. At the close of the plaintiff's case, defendant's motion for a directed verdict in favor of Horst was granted. Plaintiff did not object to the motion.

John Baerwald, a traffic engineer, testified as an expert for the plaintiff. He said that the number of cars and trains passing the Ridge Road crossing daily in 1969 made the crossing extrahazardous and justified the installation of gates. He stated that "severe sight restrictions" existed at the crossing, such as vegetation, trees, brush, weeds and the railroad embankment. He believed that these restrictions would not give a motorist approaching at 35 miles per hour "an adequate sight distance" to prepare to stop for a train reaching the crossing at 79 miles per hour.

Bernard Morris, acting chief railroad engineer for the Illinois

Commerce Commission, testified as an expert witness for the defendant. He admitted that if the Ridge Road crossing were built in 1969 with Federal funds, gates would have been required. He further indicated that he would have recommended gates with flashing lights at a double-track crossing with sight distance restrictions, speed limits and a vehicular/train traffic product identical to those at the Ridge Road crossing.

Richard McTague, the Grundy County superintendent of highways, testified that in January 1969, he began to seek Federal funding to install gates for added protection at the Ridge Road crossing.

At his death, Tonarelli was 25 years old, with a life expectancy of 47.1 years. He owned a house, was married, and had two children. Tonarelli's widow and son testified that he was a good husband and father. Two of Tonarelli's former employers testified that he was an ambitious, hard-working individual with safe driving habits. Tonarelli had been paid $200 a month to clean offices at night and on weekends, and had earned about $160 a week for three weeks as a truck driver at Meade Electric Company in Joliet. Prior to that, he was paid less than $4 an hour to work in the warehouse at Norris Electric Company. He had told three of the witnesses that he wanted to be an electrician, and one witness testified that Tonarelli had left Norris Electric Company to pursue that goal. At the time of trial, electricians in Joliet earned $17.40 an hour, and truck drivers at Meade Electric Company earned from $7.33 to $9.46 an hour.

A verdict of $1,500,000 against the Rock Island was returned by the jury. They also found that, under the doctrine of comparative negligence, the decedent was 25% negligent. Therefore, the jury awarded $1,125,000 to the plaintiff.

■ The defendant contends that the trial court erred in giving IPI Civil No. 5.01, which reads as follows:

"If a party to this case has failed to produce a witness within his power to produce, you may infer that the testimony of the witness would be adverse to that party if you believe each of the following elements:

1. The witness was under the control of the party and could have been produced by the exercise of reasonable diligence.

2. The witness was not equally available to an adverse party.

3. A reasonably prudent person under the same or similar circumstances would have produced the witness if he believed the testimony would be favorable to him.

4. No reasonable excuse for the failure has been shown."

The giving of this instruction is within the sound discretion of the

trial court, and a reviewing court will reverse only where a clear abuse of discretion appears of record. (*Hicks v. Hendricks* (1975), 33 Ill. App. 3d 486, 342 N.E.2d 144.) Before giving the instruction, the trial court must first determine that a party would in all likelihood produce the witness under the facts and circumstances of the case unless his testimony would be unfavorable. (*Feigl v. Terminal R.R. Association* (1975), 30 Ill. App. 3d 55, 332 N.E.2d 416.) Where a witness who has knowledge of the facts and is accessible to a party is not called by the party, a presumption arises that his testimony would be adverse to that party, and an instruction could or should be given to that effect upon request. *Bassi v. Morgan* (1965), 60 Ill. App. 2d 1, 208 N.E.2d 341.

■ In the case at bar, Lee Horst was the only witness alive at the time of trial with the knowledge of what occurred before and during the collision. The defendant contends on appeal that Horst, who lives in Colorado, was not within its control. However, the record indicates that defense counsel told the trial court and the plaintiff's attorney while discussing a motion *in limine* that the defendant would call Horst to testify at trial. Additionally, the defense attorney told the jury in the opening statement that the evidence would show that prior to the collision, the flashing lights, a horn or whistle, and a bell were properly working, and that a southbound driver's view was completely unobstructed. Ostensibly, the defense had planned to call Horst, the only living eyewitness, to testify to these matters. Moreover, counsel for the defense represented Horst at the opening of the trial and obtained a directed verdict in his favor at the close of plaintiff's case. It is apparent that Horst was accessible to the defendant. If Horst had become unavailable subsequent to defense counsel's indications that he would testify, defense counsel had the right to explain that to the jury; however, no attempt to do so was made. (See *Petersen v. General Rug & Carpet Cleaners, Inc.* (1947), 333 Ill. App. 47, 77 N.E.2d 58.) Since the defendant did not call Horst, there is a presumption that his testimony would have been adverse to the defendant.

■ ■ Although the presumption does not apply if the witness was equally available to either party, a witness is not considered equally available to a party if there is a likelihood that he would be biased against that party. (See Comment, IPI Civil No. 5.01; *Chapman v. Foggy* (1978), 59 Ill. App. 3d 552, 375 N.E.2d 865.) In the instant case, Horst had been sued by the plaintiff and had spent several years defending himself. In addition, he had been employed by the defendant for more than six years. Under these circumstances, there is a likelihood that Horst would have been biased against the plaintiff. We

cannot say that Horst was equally available to the plaintiff and the defendant. We believe that the trial court did not abuse its discretion in giving IPI Civil No. 5.01.

■ The defendant next argues that the jury's finding was not supported by the evidence and that, therefore, the trial court should have granted the defendant's motion for a judgment *n.o.v.* In reviewing the trial court's denial of a motion for a judgment *n.o.v.*, we need only determine whether all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand, and this requires an even more nearly conclusive evidentiary situation than does the manifest weight of the evidence standard. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504; *L. D. Brinkman & Company-Midwest v. National Sponge Cushion Co.* (1979), 76 Ill. App. 3d 683, 394 N.E.2d 1221.) Expert testimony indicated that sight restrictions made the crossing extra hazardous. One of the expert witnesses testified that he would have recommended gates with flashing lights to adequately protect vehicular traffic there. We cannot say that the jury's finding of 75% negligence on the part of the defendant is so contrary to the evidence as to reach the *Pedrick* standard. The trial court did not err in denying the motion for a judgment *n.o.v.*

■ The defendant asserts that references to its failure to put an eyewitness on the stand in the plaintiff's closing argument were improper. While such references would constitute error if there were no indication that the witness was under the defendant's control (see *Wetherell v. Matson* (1977), 52 Ill. App. 3d 314, 367 N.E.2d 472), a party's failure to call a witness within its control is a proper subject of comment (*Nakis v. Amabile* (1981), 103 Ill. App. 3d 840, 431 N.E.2d 1255). As discussed above, the defendant's opening statement and discussions relative to a motion *in limine* with the trial judge and plaintiff's attorney indicated that the defendant would put an eyewitness on the stand. Furthermore, counsel for the defense represented an eyewitness, Horst, at trial. We believe that the witness was within the defendant's control. Reference to the defendant's failure to call the eyewitness in the plaintiff's closing argument was not improper.

■ ■ The defendant further contends that the plaintiff's rebuttal argument was improper in that counsel mentioned the possibility of a passing westbound freight train having blocked Tonarelli's view of the oncoming eastbound passenger train, where no evidence of a westbound train was presented at trial. In response to the defense attorney's charge in closing argument that this was "simply a man trying

to beat a train," counsel for the plaintiff stated:

"[W]e don't know whether this is a fact or not—but *** a freight train could have passed in that direction—which for George Tonarelli would block the view of an oncoming passenger train, thereby blindsiding him, we don't know that, because we don't have the evidence. The evidence hasn't been produced."

Attorneys are allowed broad latitude in drawing reasonable inferences and conclusions from the evidence. (*Saputo v. Fatla* (1975), 25 Ill. App. 3d 775, 324 N.E.2d 34.) Here, each attorney suggested a possible explanation for the accident. The comment in rebuttal was no less a reasonable inference than was the assertion in the defendant's closing argument. Therefore, it was a proper response. See *Harris Trust & Savings Bank v. Ali* (1981), 100 Ill. App. 3d 1, 425 N.E.2d 1359.

■ The defendant next asserts that the trial court erred in refusing to give defendant's instruction No. 6, which reads as follows:

"In reaching your verdict you will not increase the amount of the verdict by reason of federal, state or local income taxes since the amount awarded to plaintiff is not taxable income to plaintiff within the meaning of these tax laws."

The defendant relies upon *Norfolk & Western Ry. Co. v. Liepelt* (1980), 444 U.S. 490, 62 L. Ed. 2d 689, 100 S. Ct. 755, which held that in a wrongful death action brought under the Federal Employers' Liability Act (FELA) in an Illinois court, it was error to refuse such an instruction. The defendant contends that *Liepelt* overruled two Illinois cases (*Hall v. Chicago & Northwestern Ry. Co.* (1955), 5 Ill. 2d 135, 125 N.E.2d 77; *Raines v. New York Central R.R. Co.* (1972), 51 Ill. 2d 428, 283 N.E.2d 230), which ruled that juries should not be instructed on the tax consequences of their awards. *Hall* and *Raines* were actions under the FELA. A similar argument was considered and rejected in *Johnson v. Hoover Water Well Service, Inc.* (1982), 108 Ill. App. 3d 994, 1009, 439 N.E.2d 1284, where the court stated that it agreed

"that *Hall* and *Raines* have been overruled by *Liepelt* with respect to Illinois cases arising under the FELA. However, the *Liepelt* decision does not, and could not, change the Illinois rule in purely State matters where, as here, no Federal issues are involved. We, therefore, find *Hall* and *Raines* still controlling here."

In the instant case, plaintiff's action was brought under the State wrongful death statute (Ill. Rev. Stat. 1975, ch. 70, par. 1 *et seq.*) and not under any Federal law. Therefore, we find that *Liepelt* has no ap-

plication to this case, and the defendant's argument is without merit. The trial court properly refused to give the defendant's income tax instruction.

The defendant maintains that the verdict is excessive as a matter of law. An award of damages in a wrongful death action is not subject to scientific computation and thus is a matter for jury determination. (*Dooley v. Darling* (1975), 26 Ill. App. 3d 342, 324 N.E.2d 684.) The jury's verdict is subject to the rule that where its findings are evidently the result of prejudice, sympathy or passion, it should be set aside. *Dooley; Robinson v. Workman* (1957), 15 Ill. App. 2d 25, 145 N.E.2d 265.

Here, the jury was properly instructed on damages in a wrongful death action. The jury had for consideration evidence of Tonarelli's work habits, employment experience, ambitions, earning capacity and contribution to his family. Based on the evidence, the jury determined his future earning capacity and contribution. It awarded damages of $1,500,000, and reduced that amount by 25%, the proportion by which it found Tonarelli to be negligent. The resulting verdict was $1,125,000. From an examination of the record, we are convinced that the verdict finds support in the evidence and that the jury was not acting under an improper motive. As stated in 25A C.J.S. *Death* sec. 115 (1966),

> "[t]here is necessarily difficulty in fixing a pecuniary value on human life; the amount of compensation to be recovered must depend to quite an extent on the good judgment of the jury under proper instructions from the court. *** [T]he assessment of damages must be left to the sound, deliberate, fair, or intelligent judgment, or common or good sense, of the jury; and the jury may allow such damages as they deem reasonable in accordance with their common knowledge, experience, and good sense."

Finally, the defendant contends that the application of the doctrine of comparative negligence in this case was retroactive, denying the defendant its vested right to a contributory negligence defense and its constitutional rights to due process and equal protection. *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, abolished the doctrine of contributory negligence and instituted the doctrine of comparative negligence. The supreme court held that "this opinion shall be applied *** to all cases in which trial commences on or after June 8, 1981." (85 Ill. 2d 1, 28.) The instant trial began on July 9, 1981. The defendant's assertions that the doctrine of comparative negligence

was applied retroactively, and that his rights were violated thereby, are unfounded.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and WHITE, JJ., concur.